STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Otis D. JAMES, Respondent.

No. 2191.

Supreme Court of Oklahoma.

July 29, 1969.

Rehearing Denied July 29, 1969.

Respondent, Otis D. James, ordered disbarred from practice of law within the State of Oklahoma and his name is hereby stricken from the roll of attorneys of this State.

Jeff R. Laird, Gen. Counsel, Oklahoma City, for complainant.

Gus Rinehart, Oklahoma City, Wilson Wallace, Ardmore, W. Ryan Russell, Charles D. Scales, Oklahoma City, for respondent.

LAVENDER, Justice.

This proceeding involves a complaint against Otis D. James, a member of the Bar of this state, in which complaint James is accused of having solicited a bribe on two occasions while serving as County Judge of Jefferson County, Oklahoma. James was also accused of using his privilege as a Judge of that county to charge long distance personal telephone calls to the county. Regarding the personal use of the telephone, James made restitution to the county for its expenditures on his account and the recommendation of the Trial Authority is that no disciplinary action against James be taken on account of the telephone matter. Another, and indeed, much more serious situation exists with reference to the accusation of bribery.

According to the written complaint which appears in the record, and which was signed by the then President of the Oklahoma Bar Association, James is accused of violating the canons of legal ethics applicable to lawyers generally in that on or about the 10th day of June, 1966, at Waurika, Oklahoma, James offered to one Ivy, an attorney, that he, James, would allow $1,750.00 as a fee in a pending matter in James' court if Ivy would pay James $500.00. That thereafter, on or about the 16th day of June, 1966, the said James was again discussing with Ivy and one Anderson, Ivy's co-counsel in another matter pending in James' court, the allowance of a $5,000.00 fee to said attorneys for their work in that case and James suggested that if he allowed $5,500.00 that the attorneys would be expected to pay him, James, $500.00.

Pursuant to Article IX of the Rules Creating and Controlling the Oklahoma Bar Association, adopted and promulgated by this court, and which appear as Appendix 1, Chapter 1, Title 5 O.S.Supp. 1968, a Trial Authority was named to hear the complaint against the Respondent. Aft-

er due notice to James, the matter was heard, at which time and place James was present in person and by counsel. At the conclusion of the hearing, the Trial Authority made certain written findings of fact, conclusions of law, and recommendations to this court.

■ In keeping with the gravity of the offense with which the Respondent, James, is charged, this court has carefully examined the record of the proceedings before the Trial Authority. From that examination we are of the view that the Trial Authority's recommendation that James be disbarred from the practice of law in this state is well taken.

We are of the view that the Findings of Fact of the Trial Authority are supported by competent evidence sufficient to sustain the conclusion of the Trial Authority that the charges are true. The Trial Authority found, among other things:

" * * * that the Respondent, Otis D. James, became County Judge of Jefferson County, Oklahoma, about February, 1965, * * *.

" * * * that during the summer of 1965 one James H. Ivy, an attorney * * * discussed the matter of an attorney fee in a certain case with the Respondent, and that during this discussion the Respondent suggested that there might be a 'little cushion' put on the fee; that a few weeks later, when asked what was meant by 'cushion', the Respondent stated, 'I have to have some campaign expenses'; that the Respondent did approve a fee of $3,000.00, and the matter of campaign expenses was evaded at that time. * * * in December, 1965, or January, 1966, the said James H. Ivy in company with one Bill Anderson went to the home of the Respondent at about nine o'clock at night to inquire whether the Respondent would be embarrassed to set aside an order of appointment of Administrator that he had previously made in a Payne Estate probate; that Anderson and Ivy represented themselves as co-counsels in said case, having been employed following the withdrawal of prior

attorneys; that at the time the Respondent mentioned that the attorneys were going to draw a pretty good fee and inquired if there would be some campaign expenses for the court. There is some evidence that at this time there was a discussion of the allowance of a temporary fee and its possible amount, but that since these two attorneys had just been retained the fee could not be as high as mentioned. * * *."

Paraphrasing the findings of the Trial Authority, it appears that at some time prior to June 14, 1966, in preparation of the filing of the annual accounting in a case, styled Trout Guardianship, a conference was had between James H. Ivy, Attorney, and the Respondent, which centered around the allowance of a fee of $1,750.00, of which the Respondent was to receive $500.00, and the Respondent stated "there would be no more evasion about campaign expenses"; that several discussions on different occasions occurred culminating in the conference between Ivy and Respondent in Ivy's office on June 14, 1966, which was arranged by agreement between the two of them. A recording device was installed in Ivy's office by the County Attorney.

That on June 14, 1966, Ivy and Respondent again were discussing the payment of $500.00 to the Respondent and the Respondent—referring to the Trout Guardianship matter—said, "You want to keep the damn thing, don't you?". Thereafter, Ivy paid $95.00 in cash to Respondent and agreed to pay $5.00 in a few days and the $400.00 balance within thirty days.

Thereafter, on the 16th day of June, 1966, · James and Ivy met again in Ivy's office where further discussions were had concerning the Payne Estate matter and the amount of the fee which James would approve for Ivy. This conversation was also recorded upon a concealed tape recorder which was set in operation by Ivy. In this conversation, James again referred to adding something to the fee for a "cushion" for the Respondent for "campaign expenses." The sum of $500.00 was men-

tioned to be added to a total fee of $5,000.-00. Ivy suggested to Respondent that the matter should be discussed with Anderson, his co-counsel. Ivy, at this time, paid the $5.00 mentioned above.

Thereafter, within a few days, Anderson met with James in Ivy's office. Again the conversation was being recorded. This time the machine was activated by Anderson, without James being aware of it. In this conversation, which was testified to by Anderson, as well as heard by the replaying of the tape, James reiterated his need for a "cushion" on the fee to be allowed in the Payne matter because the campaign (which had been concluded in May) had cost more than he thought it would.

■ Respondent contends that the evidence adduced at the hearing was not sufficient to support the recommendation of disbarment. In particular, Respondent challenges the tape recordings of the conversations between Ivy, James, and Anderson. It is argued that the tapes were improperly admitted because they were "too inaudible and indistinct".

The tapes were played and while we may be inclined to agree that in certain parts the tapes are rather indistinct, in other portions the tapes are adequate to at least corroborate the oral testimony of Ivy as to the nature of the conversations. There was evidence that these tapes, soon after they were taken, were taken into the custody of the then County Attorney or Assistant District Attorney of Jefferson County and retained by him until he delivered them to the counsel for the Bar Association shortly before this proceeding began.

■ It appears from the record that the conversations which were recorded on tapes were planned for in advance by both Ivy and Anderson and that the then County Attorney, Largent, assisted. The machines were installed in Ivy's office prior to the time the conversations occurred and were activated, or set in operation, by either Ivy or Anderson immediately prior to the conversations and were cut off immediately afterwards. The tapes were then listened to by Largent in the presence of Ivy and, on one occasion, in the presence of the Chairman of the Board of County Commissioners of Jefferson County. One of the conversations was recorded on a wire-recorder and later transferred to a tape. Largent testified as to the manner in which the transcription was made from the original wire to the present tape.

A "copy" of an original recording, obtained in a similar fashion, was declared admissible in a criminal prosecution by the Court of Criminal Appeals of Oklahoma in Hurt v. State (1956), Okl., 303 P.2d 476. In the testimony of Largent, as well as Ivy, the voices of the participants in the recorded conversations were identified. In the Hurt case, supra, the Court of Criminal Appeals stated, and we agree:

"A tape recording which represented conversation between accused and a witness which was traced from time of making original wire recording to reproduction on tape, and until admitted in evidence, and which, witness testified, contained voices of defendant and himself, was properly identified."

See also, Williams v. State (1951), 93 Okl. Cr. 260, 226 P.2d 989, and Leeth v. State (1951), 94 Okl.Cr. 61, 230 P.2d 942.

■ 97 A.L.R.2d 1302, under "B. Cooperation or consent of one party to conversation," appears the following:

"§ 10. General rule of admissibility. Evidence secured by means of a mechanical or electronic eavesdropping device is generally held admissible regardless of other particular factors which may be involved in the case, where it appears that one of the parties to the overheard conversation consented to or co-operated in its interception." (Citing cases from many jurisdictions, including the Hurt and Leeth cases, supra, from Oklahoma.)

The Respondent argues, in his brief, that Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040; Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed. 734, 739, 97 A.L.R.2d 1277; United

States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 50, 64, all are authority that would call for the exclusion from the evidence of the tape recordings. Respondent argues that when he was invited to Ivy's office to converse with Ivy and then with Anderson that the purpose was to entrap him and the obtention of the conversation was a violation of his Fourth Amendment (U.S. Constitution) rights against searches and seizures.

We do not understand the cited decisions of the United States Supreme Court as holding that a tape recording obtained under circumstances such as exist here to be inadmissible. Berger, supra, Silverman, supra, and Jeffers, supra, all involved recordings of conversations obtained as a result of trespass to "protected" premises in which both of the participants in the conversation had a constitutionally protected right to converse privately. In none of the cases did one or the other of the participants in the conversation agree—or was even aware—that the conversation was being recorded. Compare these cases with Lopez v. United States (1963), 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, reh. den. 375 U.S. 870, 84 S.Ct. 26, 11 L.Ed.2d 99. Lopez attempted to bribe an internal revenue agent. The agent reported the attempt to his superiors and they directed him to secrete a recording device on his person and return to the defendant's place of business. The agent recorded some highly damaging (to Lopez) conversations. The tapes were admitted in evidence and the admission was approved by the opinion of the Supreme Court. The Court noted that the use of the tapes was to corroborate the agent's testimony as to the nature of the conversation. The Court, quite reasonably we think, concluded, in effect, that Lopez could not have been entrapped because previously he had voluntarily—without inducement on the part of the officer—offered a bribe and he was merely repeating it in the recorded conversation. It was pointed out that surely Lopez must have realized that the agent might some day testify as to what was said. The Court said:

"Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. * * *"

We think that what was said by the Supreme Court in Lopez, supra, is equally applicable here. Commencing on page 1308 of 97 A.L.R.2d, appear a number of cases in which tape recordings were held admissible in bribery prosecutions.

We hold that the tape recordings were properly admitted in evidence.

■ The Respondent points out that the alleged acts of misconduct on the part of the Respondent occurred while the latter was serving as a judicial officer and therefore the Bar Association "has no jurisdiction of the subject matter—exclusive jurisdiction being in the Court on the Judiciary." We do not deem it necessary to decide the question. Suffice it to say that before the institution of these proceedings Respondent resigned his judgeship. In State of Oklahoma ex rel. Oklahoma Bar Association v. Tallent (1956), Okl., 299 P.2d 162, this court said:

"The Oklahoma Bar Association has jurisdiction to entertain complaints filed against members of that Association touching present fitness to practice law based on acts of attorney occurring during prior incumbency of office of county judge."

In Article IX, "Disciplinary Proceedings", of the Rules (of this court) Creating and Controlling the Oklahoma Bar Association, Ch. 1, App. 1, Title 5 O.S.Supp.1968, effective September 24, 1966, we expressed the following view:

"This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all members of the Oklahoma Bar Association. This Court further declares that a member of the Bar of this State may not take

unto himself any office or position, or shroud himself in any official title, which will place him beyond the power of this Court to keep its roster of attorneys clean. In re Stolen, 193 Wis. 602, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355; In re Simpson, 79 Okl. 305, 192 P. 1097; In re Burton, 67 Utah 118, 246 P. 188. * * *."

As we have heretofore noted, Respondent has contended all through these proceedings that the funds which he solicited from the attorneys, Ivy and Anderson, were for Respondent's campaign expenses, not bribes to be paid to him to induce him to award or allow to said attorneys certain fees in matters then pending in Respondent's court. We notice that in the matter involving payment to Ivy of a fee of $1,750.00, of which James was to receive $500.00, the order of allowance was, according to Ivy, signed by Respondent after Ivy guaranteed to him that Respondent would be paid a total of $500.00.

Here the Respondent made it quite clear that he would only extend his judicial favor if he was to receive financial remuneration in return. The fact that Respondent called it an attempt to solicit campaign funds is wholly immaterial. Such activities on the part of any judge brings shame and disrepute to all of the members of the bench and bar, and cannot do else, if continued, but to destroy our system of justice which, in a free society, depends for its effectiveness upon the continued confidence and trust of the people. The people must be able to rely on the integrity and honesty of their judges and lawyers, and it is the duty of this Court, whenever conduct of a lawyer, such as is reflected by this record, is brought to its attention, to prevent such individual from continuing to enjoy the solemn trust and high responsibility with which he was invested as a member of the Bar of this State.

The remaining contentions of Respondent concern the asserted lack of probative quality of certain testimony of witnesses and the general asserted insufficiency of the evidence to support an order of disbarment. As we have stated at the outset, we have carefully reviewed the entire record of the evidence and have listened to the tape recordings which were admitted in evidence. We cannot agree with Respondent that such evidence is insufficient. By the preponderance of the evidence the charges against Respondent have been established to our satisfaction.

It is therefore ordered that Respondent be disbarred from the practice of law in this State and that his name be stricken from the Roll of Attorneys of the State of Oklahoma.

All the Justices concur.