284 So.2d 564 (1973)
LOUISIANA STATE BAR ASSOCIATION
v.
Jesse L. FUNDERBURK, Jr.
No. 52982.
Supreme Court of Louisiana.
October 29, 1973.
*565 John F. Pugh, Thibodaux, Chairman, James H. Drury, Curtis R. Boisfontaine, New Orleans, Leonard Fuhrer, Alexandria, A. Leon, Hebert, Baton Rouge, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for plaintiff-applicant.
R. Scott McClain, Baggett, Hawsey, McClain & Morgan, Lake Charles, for defendant-respondent.
BARHAM, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted these proceedings against respondent, Jesse L. Funderburk, Jr., a member of the Bar of the State of Louisiana, alleging that an investigation of certain alleged misconduct on the part of the respondent culminated in an opinion by the membership of the Committee that respondent was guilty of conduct of sufficient gravity as to evidence a lack of fitness for the practice of law.
The petition of the Louisiana State Bar Association, appearing through the Committee on Professional Responsibility, (hereinafter referred to as petitioner) represents that the investigation held was in full accordance with the law, the rules of this Court and the provisions of Article XV of the Articles of Incorporation of the Louisiana State Bar Association. Due notice of the charges against the respondent was given him in May of 1971. The notice contained two specifications of alleged misconduct and set a date for a formal hearing; the petitioner's communication set forth respondent's rights to present a defense and be represented by counsel at the hearing.
A hearing was held on October 13, 1972, at which respondent was present and represented by counsel. Subsequent to the hearing, the petitioner, being of the opinion that its investigation and the evidence obtained at the hearing indicated respondent's guilt regarding the two instances of misconduct charged, filed its petition in this Court. Therein petitioner prayed that respondent be ordered to answer its petition for disciplinary action within fifteen (15) days, that the Court appoint a Commissioner to take evidence and report to *566 the Court his findings of fact and conclusions of law, and that the Court ultimately disbar, suspend or discipline respondent, in a manner which the Court deemed appropriate. The petition further prayed that respondent be ordered to pay all costs of the proceedings in the event the Court's decision is adverse to respondent.
On November 21, 1972, respondent was ordered by this Court to answer the petition for disciplinary action. Respondent's answer was filed on December 6, 1972, and this Court thereafter appointed Marlin Risinger, Jr. as Commissioner to receive evidence and report his findings of fact and conclusions of law. Pursuant to his appointment the Commissioner held a hearing, after due notice, on March 22, 1973. Respondent was present, represented by counsel, and evidence and further testimony were taken during the course of the hearing. Thereafter, on July 20, 1973, the Commissioner filed his report in this Court, setting forth his findings of fact and conclusions of law and concluding that respondent is guilty of the misconduct charged under both specifications.
Prior to discussing the two specifications of misconduct charged by petitioner and respondent's arguments relative to the Commissioner's findings thereon, we first deal with respondent's exception to the jurisdiction of this Court. Respondent filed the exception to this Court's jurisdiction on April 9, 1973, and argued therein that, under this Court's decisions in In re Jones, 202 La. 729, 12 So.2d 795 (1943) and In re Meraux, 202 La. 736, 12 So.2d 798 (1943), this Court has no jurisdiction to disbar respondent, who was at the time of the misconduct alleged, Judge of the City Court of Leesville, but only has jurisdiction to remove him from office. It is sufficient to note that at the time of this Court's decisions in the two cited cases, Article 9, Section 5 of the Louisiana Constitution of 1921 was in effect.[1] This constitutional provision provided the sole penalty for a judge's misconduct. However, at the time of the alleged acts of misconduct involved in this case, Article 9, Section 4(F) of our Constitution controlled, as it does at present. That Subsection provides, in pertinent part, as follows:
Action against a judge under this section shall not preclude disciplinary action against him with respect to his license to practice law.
Considered with Article 7, Section 10 of the Constitution, conferring on this Court exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar, Article 9, Section 4(F) makes clear this Court's jurisdiction over the proceeding under consideration. Respondent's exception to our jurisdiction is without merit and cannot be sustained.
SPECIFICATION NO. 1
This specification charges, in essence, that on or about June 6, 1970, in Vernon Parish, Louisiana, respondent, while a duly licensed attorney allowed to practice law and while also City Judge of the Leesville City Court, did use his office as a judge to cause and require Terry Lynn Taylor, an individual then under charges in the City Court, to submit to an act of fellation, under threat of depriving him of his liberty. The respondent pled guilty in federal court to a charge of depriving Terry Lynn Taylor of his civil rights by this conduct, in violation of 18 U.S.C. § 242.
The specification concludes that respondent's conviction of this act involving extreme and apparent moral turpitude has brought upon the legal profession of this State disrepute and injury.
The Commissioner's report notes that petitioner's action against respondent is brought as a charge of misconduct, the nature of which is set forth in the preceding paragraph, under Section 4 of Article XIII of the Articles of Incorporation of the *567 Louisiana State Bar Association, which were in effect at the time of the alleged misconduct and when the respondent was charged by the petitioner. Respondent was indicted by a federal Grand Jury on October 30, 1970; the indictment charged, in pertinent part, as follows:
That from on or about June 6, 1970 and through June 7, 1970, in Vernon Parish, in the Lake Charles Division of the Western District of Louisiana, JESSE LEE FUNDERBURK, City Judge of the Leesville City Court, Ward 1, Vernon Parish, Louisiana, while acting under color of the laws of the State of Louisiana, did wilfully require Terry Lynn Taylor, then an inhabitant of the State of Louisiana, and who was then subject to charges in the Leesville City Court, to submit to an act of fellation, with the intent to deprive Terry Lynn Taylor of rights secured and protected by the Constitution of the United States, namely, the right to equal protection of the laws of the State of Louisiana and the right not to be deprived of his liberty without due process of law, all in violation of Title 18, United States Code, Section 242.
Respondent entered a plea of guilty to the charge on November 12, 1970. Petitioner offered the guilty plea as evidence to prove the charge of Specification 1.
The Commissioner correctly concluded that respondent's guilty plea to the criminal charge, as a judicial declaration against interest, is competent evidence of the conduct which comprised the crime.[2] That conduct, i. e., illegal use of his judicial office to deprive one of his liberty, and to require one to commit a crime, was held by the Commissioner to constitute misconduct of such gravity as to evidence lack of moral fitness for the practice of law. The plea gives rise to a rebuttable presumption of guilt of that conduct, causing the burden to shift to respondent to overcome the presumption. Respondent argues that the Commissioner erred in concluding that he had not rebutted the presumption. He cites his unequivocal denials of guilt at both the hearing held by the petitioner and the later Commissioner's hearing and his insistence at both hearings that he entered a plea of guilty only because he was in such an emotional state at the time of the plea that he was unable to go through the trial and because he was fearful of the effect such a trial would have on his family and friends.
Respondent further urges that the testimony of Drs. Erickson and Stockard, psychiatrists who treated him while he was a patient at the Shreveport Veterans Administration Hospital subsequent to his conviction of the federal crime, serves to overcome the presumption of guilt. An examination of the testimony of Dr. Erickson reveals, in our opinion, nothing which would have any bearing on the question of guilt or innocence of the misconduct charge, or on overcoming the presumption which arose as a result of the introduction into evidence of the guilty plea. Dr. Stockard's testimony, is, we believe, no more pertinent to the issue of rebutting the presumption of guilt.
Dr. Stockard testified, in response to questions propounded by petitioner, that she did not elicit during examination and treatment any facts which indicated to her that respondent has homosexual tendencies, that she had discussed with respondent the question of whether he was or was not a homosexual, and that she did not believe that respondent would commit "such an act" (an act of fellation).
The Commissioner, in his report, noted the following in his conclusions of law regarding Specification 1:
"With due regard for respondent's denial of the act, explanation of his plea *568 of guilty, and the medical testimony, your Commissioner must conclude that respondent has not overcome the force and implication of his conviction of the crime upon his plea of guilty thereto which respondent voluntarily made with representation of able counsel. Your Commissioner considers that Dr. Stockard's medical testimony is derived from opinions which she formed of respondent's character while attending him for an acute depression rather than an examination and study directed at determining whether or not respondent did have homosexual tendencies. Dr. Stockard may well be qualified to have made such examination and study but her purpose in attending respondent was to treat him for acute depression rather than to make a determination of the presence or absence of homosexual tendencies.
"As pointed out by respondent's counsel in his memorandum submitted to your Commissioner, the indictment to which respondent pled guilty does not charge that respondent committed an act of fellation but rather that he `did willfully require Terry Lynn Taylor to submit to such an act.' Specification No. 1 herein, following the indictment, likewise, does not charge respondent with an actual act of fellation but only that he caused and required another to submit to such an act. One who requires another to submit to such an act is a principal to the crime even though he did not perform the act. There is no distinction to be made in this regard in these proceedings."
The Commissioner then concludes that respondent is guilty of the misconduct charged under Specification No. 1, that such misconduct evidences a lack of moral fitness to practice law, and that such conduct is grounds for disbarring or otherwise disciplining respondent.
We are of the opinion that the Commissioner did not err in concluding that respondent has failed to rebut the presumption of guilt which arises from the introduction of the guilty plea to the federal criminal charge. The presumption is that the respondent is guilty of committing the act charged in the federal indictment to which he pled guilty; that act consisted in material part of using his office to require Terry Lynn Taylor to submit to an act of fellation under threat of depriving him of his liberty. The charge is not that respondent is a homosexual or that he personally committed some homosexual act with Terry Lynn Taylor. Fellation is defined as oral stimulation of the penis (especially to orgasm) and is not confined to homosexual activity. We believe that, aside from respondent's own disclaimer of guilt of the charge to which he pled, the testimony which he claims rebuts the existing presumption is only relevant to the issue of respondent's homosexuality or heterosexuality, not his guilt or innocence of the act charged. Under the circumstances, we are compelled to hold that the prima facie case of respondent's guilt has not been disproved and we therefore concur in the Commissioner's conclusions of respondent's guilt. We believe that the presumption that respondent is guilty of using his office to cause and require an individual charged in his court to submit to an act of fellation, under threat of depriving the individual of his liberty, has in no wise been rebutted. That respondent's established misconduct is legally and morally reprehensible and evidences of lack of moral fitness for the practice of law is, we believe, a foregone conclusion.
SPECIFICATION NO. 2
Specification No. 2 charges that respondent, having been indicted as a result of the act of fellation under the circumstances outlined in Specification No. 1, illegally and without justification caused to be issued, and signed, a $5,075.00 check dated October 27, 1970, payable to Love, Rigby, Dehan and Love, and drawn against the *569 Leesville City Court Indigent Defender Fund as payment to provide for his defense of the federal charges. The specification further notes that on November 25, 1970, the firm of Love, Rigby, Donovan, Dehan and Love refunded to respondent, by check to his order, $1,933.95, which refund respondent returned to the Indigent Defender Fund, leaving a balance of $3,141.05 due said fund. The Specification further charges that these acts constitute improper and unethical conduct, and that such alleged conduct involving serious moral turpitude, has brought upon the legal profession discredit and disrepute.
Evidence taken at the hearing held by petitioner established that respondent, anticipating the necessity of defending charges against him by a federal Grand Jury, retained Mr. Kenneth Rigby, of Love, Rigby, Dehan and Love, to represent him in connection with any charges that might issue from the Grand Jury. Respondent asked Mr. Rigby if the attorney's fees for representation could properly be paid out of the Leesville City Court funds, but did not indicate to his attorney that he intended to use Indigent Defender funds. Mr. Rigby, after researching the matter, reported to respondent that he could find no prohibition against use of City Court funds for the purpose. Accordingly, Mr. Rigby agreed to accept payment from the City Court funds, with respondent's agreement that if reimbursement was required because the use was found to be improper, respondent would pay Mr. Rigby's fee personally. Respondent's own testimony established that the City Court of Leesville had an Indigent Defender Fund, that the money therein was deposited in a City Court bank account under the name "Indigent Defender Fund" and that the respondent's office had a particular checkbook for this account, although the name of the account was not imprinted on the checks. Respondent's testimony reveals that his designation and use of Indigent Defender funds was not inadvertent. He testified that no printed or written designation, indicating that the check was drawn on the Indigent Defender account, appeared on the check given to Mr. Rigby until after Mr. Rigby had presented the check at the bank. When the check was presented, the bank requested that respondent designate the account to be debited, and respondent sent his secretary to insert over his signature the designation, "Indigent Defender Fund", in order that the check would be paid from that fund.
Mr. Rigby's testimony established that he received and cashed the check without any knowledge that it was drawn on the Indigent Defender Fund. Respondent's testimony was to the effect that he possessed personal funds and property with which he could have paid his attorney's fee. Respondent's testimony, and an exhibit introduced at the hearing held by petitioner, further established that respondent, on January 28, 1971, repaid the Indigent Defender Fund the remainder of the money due, after demand from respondent's successor on the bench.
The Commissioner's report notes that Specification No. 2 contains error, in that it alleges that the respondent had already been indicted when he caused issuance of the check in question. In fact, the $5,075.00 check was issued, payable to the law firm of respondent's attorney, three days prior to the date that the federal Grand Jury returned its indictment. We agree with the Commissioner's conclusion that this error did not in any way prejudice respondent.
The Commissioner concluded that the respondent's intentional use of the Indigent Defender Fund to pay his attorney was misconduct involving moral turpitude and dishonesty and reflecting on respondent's fitness to practice law. The Commissioner concluded, and we agree, that neither respondent's agreement to pay the attorney's fee with personal funds in the *570 event that payment with city court funds be disallowed, nor respondent's repayment of such funds upon request of his successor judge, amounts to excuse or justification. As pointed out by the Commissioner, the very name of the account used, "Indigent Defender Fund", denies respondent any excuse, justification or extenuation for his causing those funds to be paid out for his defense.
The testimony adduced at the hearing held by the petitioner establishes, and the respondent does not attempt to refute, that respondent's attorney was never asked his advice about the propriety of the use of the "Indigent Defender Fund" as the source of the payment of his fee, that the attorney at no time advised respondent that he could properly use that fund for payment and that Mr. Rigby did not know of the existence of that fund or respondent's use of that fund to pay his fees.
We agree that respondent's misconduct with regard to this specification was a willful violation of the rules of professional ethics and we are constrained to hold that this violation is of sufficient gravity to evidence a lack of moral fitness for the practice of law.
Accordingly, having found that respondent is guilty of both specifications of misconduct levelled by the petitioner and that these instances of misconduct are of sufficient gravity to evidence respondent's lack of moral fitness for the practice of law, we conclude that no remedy short of disbarment can adequately maintain the integrity of the bar and protect the public.
For the reasons assigned, it is ordered, adjudged and decreed that the name of Jesse L. Funderburk, Jr., respondent herein, be stricken from the Roll of Attorneys, and his license to practice law in Louisiana be revoked and the same is hereby cancelled. Respondent is to bear all costs of this proceeding.
NOTES
[1] Article 9 § 5 was repealed by Acts 1968, No. 661, adopted Nov. 5, 1968.
[2] Respondent states in brief: "Respondent does not deny that such a plea is an admission against interest and constitutes a rebutable presumption of guilt."