330 So.2d 712 (1976)
THE FLORIDA BAR, Complainant,
v.
David Lucius McCain, Respondent.
No. 48385.
Supreme Court of Florida.
March 24, 1976.
Rehearing Denied May 18, 1976.
*713 Bernard H. Dempsey, Jr., Bar Counsel, Orlando, Richard C. McFarlain, Asst. Director  Legal and Wilson J. Foster, Jr., Asst. Staff Counsel, Tallahassee, for The Florida Bar, complainant.
R.J. Beckham of Beckham & McAliley, Miami, for respondent.
HATCHETT, Justice.
We have for decision a "motion to dismiss and/or motion to quash" a report of probable cause dated October 31, 1975. In the challenged report, the Board of Governors of The Florida Bar found "probable cause justifying further disciplinary proceedings against the respondent [movant here]" in connection with seven separate allegations[1] of misconduct occurring "while [McCain was] a member of The Florida Bar and serving as a judicial officer of the State of Florida." By the present motion, McCain asks this Court to halt all proceedings brought against him under the Integration Rule. We deny the motion, and direct that appropriate disciplinary proceedings go forward.
Ordinarily this Court does not entertain interlocutory questions arising in the course of proceedings under the Integration Rule for the discipline of attorneys. In re: The Florida Bar, 329 So.2d 301 (Fla., 1974). Today, however, we decide on its merits McCain's original motion, which is in the nature of an appeal from the decision of the Board of Governors to go forward; the Board's decision, reflected in its report of probable cause, is an apparent rejection of the various jurisdictional arguments made to it,[2] and it is *714 with the basic question of jurisdiction that we are concerned. The present proceedings bear some resemblance, therefore, to proceedings on suggestion for writ of prohibition. Cf. In re Proposed Disciplinary Action By The Florida Bar Against a Circuit Judge, 103 So.2d 632 (Fla. 1958) (on application for cease and desist order); In re Investigation of Circuit Judge, 93 So.2d 601 (Fla. 1957) (on motion to quash subpoena).
In support of the motion, it is argued that there is no "jurisdiction of The Bar" to discipline an attorney for misconduct occurring while he was a judicial officer. This contention reflects a misconception of the nature of proceedings under Article 11 of the Integration Rule of The Florida Bar. "In disciplinary matters the Board of Governors of the Integrated Bar serves merely as an adjunct or administrative agency of this Court with authority to make [findings of fact subject to our review and] recommendations [which are in no way binding on us]." In re Investigation of Circuit Judge, supra at 608. The responsibility for disbarring, suspending or otherwise disciplining lawyers who are admitted to practice in Florida rests with this Court alone. Fla. Const. art. V, § 15 (1973) ("The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted.") Admission to the Florida Bar means admission to the bar of this Court.
We are ill-equipped to function as a fact finding tribunal, however, when questions arise as to a lawyer's fitness to continue to practice law. In grievance cases, we have by rule delegated to the organized bar the task of preliminary screening and, where necessary, of ferreting out all pertinent facts. Integration Rule of The Florida Bar, art. 11. When The Florida Bar operates in this capacity, it acts not as an independent agent but as an "arm of the Court".
While we are dealing directly here with a power of the Board of Governors of the Florida Bar to conduct such disciplinary proceedings, we are actually talking about our own authority, because such officials of the Florida Bar in conducting disciplinary proceedings are mere arms of this Court and can have no greater jurisdiction or authority than this Court possesses.

In re Proposed Disciplinary Action etc., supra 103 So.2d at 634.
The assertion that a lawyer's conduct during judicial service cannot be considered in proceedings like those begun in the present case is a challenge to this Court's jurisdiction and is tantamount to a claim that a lawyer is immune from discipline for the most egregious ethical improprieties, so long as his misconduct disgraced not only the bar but the bench as well. We reject any such proposition.
Other courts have concluded almost unanimously that a judge who is no longer sitting may be disqualified from practicing law on account of misconduct exhibited as a judge. In a case involving misconduct by a Georgia superior court judge, Chief Justice Duckworth wrote:
The relation of courts and attorneys to the people is one of high responsibility, involving complete trust and confidence and absolute fidelity to integrity. We know of no sound reason why the courts must allow lawyers, solely because of their position or business, including judges of the courts, to retain their licenses despite their conduct which would disbar other lawyers. We therefore hold that, irrespective of whether one is engaged in the practice of law, or activities disconnected with the practice, including judge of the superior court, his license will be canceled for conduct that would constitute grounds for disbarment of any attorney.

Gordon v. Clinkscales, 215 Ga. 843, 114 S.E.2d 15, 19 (1960).
*715 An early Wisconsin case to the same effect is often cited for this language:
In response to the contention that the misconduct complained of was misconduct in his character as a judge, and bore no relation to his duties and responsibilities as a member of the bar, we have only this to say: One's morality or lack of morality is revealed by general conduct. One may lack morality in a great many ways. Where this lack of morality has no relation to, and does not affect, his duties and responsibilities as an attorney at law, the delinquencies are generally overlooked by the courts. But where there is lacking honest, probity, integrity, and fidelity to trusts reposed in him, it matters not whether the lack of such virtues is revealed in transactions with clients, in the conduct of lawsuits, or any other business dealings or relations. These qualities are highly essential on the part of those who are to exercise the privileges and responsibilities of members of the bar. When the lack of them become apparent, no matter what the character of the deal or transaction that may furnish the evidence, it becomes the duty of the court to purge its roster of an unreliable member. So if the respondent, by or through his acts as judge of the superior court, betrays a lack of the moral qualifications demanded of attorneys at the bar, it becomes the duty of this court to strike his name from the roll of its attorneys.

In re Stolen, 193 Wis. 602, 214 N.W. 379, 383 (1927)
We are in complete agreement with this view. In Jenkins v. Oregon State Bar, 241 Or. 283, 405 P.2d 525 (1965), which was followed only last year in In re Piper, 534 P.2d 159 (Or. 1975) and In re Sisemore, 534 P.2d 167 (Or. 1975), the Court said simply:
As far as his duty to his profession is concerned, a judge is a lawyer whose labors are performed behind the bench instead of before it. 405 P.2d at 528.
And, like the Supreme Court of Oregon, we have been
... unable to discover a valid reason for holding that while a judge can be stricken from the roll of attorneys for criminal behavior he should be immune from disciplinary action in cases involving reprehensible conduct that falls short of crime.

Jenkins v. Oregon State Bar, supra, at 527.
We reject the contention that a lawyer's status as former judge or justice immunizes him from discipline for ethical violations occurring during judicial tenure. We adopt for Florida the general rule that "misconduct in ... a judgeship, reflects upon an attorney's fitness to practice law and is consequently a proper ground for discipline." Annot., 57 A.L.R.3d 1150, 1158 (1974).
For the proposition that a lawyer cannot be disciplined for his misconduct as a judge, McCain relies on four cases: In re Proposed Disciplinary Action, etc., supra; In re Investigation of Circuit Judge, supra; In re Jones, 202 La. 729, 12 So.2d 795 (1943); and In re Meraux, 202 La. 736, 12 So.2d 798 (1943). The two Louisiana cases are no longer followed even in Louisiana. Louisiana State Bar Ass'n v. Funderburk, 284 So.2d 564 (La. 1973). The Florida cases involved judges who were sitting at the time disciplinary proceedings against them began.
This Court, in In re Investigation of Circuit Judge, supra, 93 So.2d at 604, took as its major premise the proposition that:
... where the constitution creates an office, fixes its term and provides upon what conditions the incumbent may be removed before the expiration of his term, it is beyond the power of the legislature or any other authority to remove *716 or suspend such officer in any manner than that provided by the constitution. Falloon v. Clark, 61 Kan. 121, 58 P. 990; Lowe v. Com., 3 Metc., Ky., 237; Throop, Pub.Off., Section 341; State ex rel. Holmes v. Wiltz, 11 La. Ann. 439; State ex rel. Robinson v. McNeely, 24 La. Ann. 19; Brown v. Grover, 6 Bush., Ky., 1; Page v. Hardin, 8 B.Mon., Ky., 648; Mechem, Pub.Off., Section 457.
Justice Drew succinctly stated the minor premise the following year in In re Proposed Disciplinary Action, etc., supra, 103 So.2d at 633, when he wrote:
Disbarment would not, of course, operate directly to remove petitioner from office, but all parties concede that disqualification proceedings would logically follow therefrom. This is, in fact, the only practical purpose which would be served by disciplinary action against such a judicial officer, since under the law of this State he is, during his incumbency, clothed with no other right by virtue of his membership in the Bar.
Completing the syllogism,[3] the Court concluded that application of the Integration Rule to a sitting judge was impermissible as "accomplish[ing] indirectly what cannot be done directly." Id.
Obiter dicta in the very cases McCain cites make unmistakably clear the importance of the distinction between a judicial officer who is sitting and one who like McCain has left the bench. Since he has already resigned, there exists no danger that disciplinary proceedings can eventually effect his unconstitutional removal from office. A sitting judge "is still an attorney at law and may be subject to discipline by The Bar but not until he is found guilty in an impeachment proceeding or until his tenure as judge ends." In re Investigation of Circuit Judge, supra, 93 So.2d at 606. A judge or justice whose tenure as a judicial officer has concluded "would automatically resume his status as attorney at law subject to be disciplined under the Integration Rule provided he has committed acts of unprofessional conduct of such nature as to subject him to discipline by The Bar." Id. at 608. The analogy to prosecution for crime is a close one. "If trial and punishment for infractions of state law may follow impeachment it would seem that discipline for infractions of the Integration Rule would be permitted and should take the same course." Id. at 607.
The present case closely resembles State ex rel. Oklahoma Bar Ass'n v. James, 463 P.2d 972 (Okl. 1969) where, citing its earlier opinion in State ex rel. Oklahoma Bar Ass'n v. Tallent, 299 P.2d 162 (Okl. 1956), the Court said:
The Respondent points out that the alleged acts of misconduct on the part of the Respondent occurred while the latter was serving as a judicial officer and therefore the Bar Association "has no jurisdiction of the subject matter  exclusive jurisdiction being in the Court on the Judiciary." We do not deem it necessary to decide the question. Suffice it to say that before the institution of these proceedings Respondent resigned his judgeship. 463 P.2d at 976 (emphasis supplied).
An explicit statement of the rationale for disciplinary proceedings against a former judge who is licensed to practice law may be found in In re Mattera, 34 N.J. 259, 168 A.2d 38 *717 (1961), where Chief Justice Weintraub writes:
A single act of misconduct may offend the public interest in a number of areas and call for an appropriate remedy as to each hurt. Thus it may require removal from public office. It may also require criminal prosecution. Still further it may require that the roster of attorneys be cleansed of a miscreant. The remedies are not cumulative to vindicate a single interest; rather each is designed to deal with a separate need. We can think of no reason why a prescription in the Constitution of a remedy for one purpose should be found to bespeak an intention to deny government the power to protect the public in its other interests or to immunize the offender from the further consequences his act would otherwise entail. At 42.
The present disciplinary proceedings should go forward, and we so hold.
By his motion in this Court, McCain seeks to raise two additional questions. He argues (1) that the Court should take this occasion to adopt a sort of statute of limitations; and (2) that it is improper for lawyers to pass judgment on the way a judge or justice has voted, regardless of the circumstances surrounding his vote, because the judiciary's independence might be compromised by the prospect of such scrutiny. In the posture of the present case, we reach the merits of neither of these contentions.
By order entered November 24, 1975, we stayed the disciplinary proceedings instituted against Mr. McCain. In consequence, the Board of Governors has refrained from filing a complaint pursuant to Rule 11.06(5)(a), Integration Rule, specifying with particularity the misconduct of which they believe Mr. McCain guilty. Without the specific allegations of the complaint, it can be of theoretical interest only whether, as McCain argues, a two year time limitation should apply; or whether "judicial acts" should be ruled out as a basis for discipline. These questions may forever remain merely academic, depending on the allegations in the complaint.
It may be that the complaint, when it is filed, will conform to Mr. McCain's expectations, and the issues he now anticipates may then be squarely raised. But questions of laches and questions about precisely what conduct may be the basis for disciplinary measures are common to numerous disciplinary cases. It does not foster orderly consideration of these cases to interrupt routine preliminary proceedings, in order to decide questions which are bound to come to this Court for decision, in any event.
We have treated extensively the aspect of this case which sets it apart from the run of disciplinary cases: The attorney involved formerly sat as a justice of this Court, and, before that, as a judge of the District Court of Appeal. We anticipate that these proceedings will now go forward in the same manner as all other disciplinary proceedings. In any event, we foresee no occasion for further interlocutory participation by this Court.
The motion is denied.
OVERTON, C.J., and ENGLAND and SUNDBERG, JJ., concur.
SUNDBERG, J., concurs with an opinion, with which OVERTON, C.J., and ENGLAND, J., concur.
BOYD, J., concurs in part and dissents in part with an opinion, with which ROBERTS, J., concurs.
ROBERTS, J., dissents with an opinion, with which ADKINS, J., concurs.
ADKINS, J., dissents with an opinion.
SUNDBERG, Justice (concurring).
I concur completely in the disposition of the motion before the Court in the fashion *718 structured by Mr. Justice Hatchett's opinion. It makes it clear that at this juncture we have passed on the only question before the Court, i.e., the jurisdiction of this Court to discipline an attorney for acts which bear on his current fitness to practice law, when those acts occurred while he held judicial office. Our decision does not hold that the disciplinary procedures of The Florida Bar, as adopted by this Court, can be utilized to treat with judicial misconduct. Obviously, that is a matter under our Constitution for proceedings before the Florida Judicial Qualifications Commission (Art. V, § 12) or before the Legislature (Art. III, § 17). However, as indicated by the opinion of Mr. Chief Justice Drew in In re Proposed Disciplinary Action, 103 So.2d 632 at 633 (Fla. 1958) disciplinary procedures are "designed simply to [i]nsure that such rights and privileges [to engage in the practice of law] shall not be exercised by one who has shown himself unfit to practice law, and not to penalize or punish the offending member," citing Application of Harper, 84 So.2d 700 (Fla. 1956). The language in Harper relied upon is found at p. 702 of the opinion:
"`The purpose of suspending or disbarring an attorney is to remove from the profession a person whose misconduct has proved him unfit to be intrusted with the duties and responsibilities belonging to the office of an attorney, and thus to protect the public and those charged with the administration of justice, rather than to punish the attorney.'"
The rule, then, is made simple. Since it is the object of the disciplinary program to protect the public from unfit lawyers, conduct which demonstrates a person to be presently unfit to represent the public in the practice of law, whenever occurring, is a proper subject for disciplinary action. Mr. Chief Justice Drew's opinion in In re Proposed Disciplinary Action, supra, quite logically held that disciplinary action should be suspended during the incumbency of a judge because his right to practice law is suspended during such incumbency.
Concern is expressed that to permit The Florida Bar to initiate disciplinary proceedings against a former judge will affect the independence of the judiciary. This is premised upon the hypothesis that members of the bar will institute disciplinary proceedings against former judges to retaliate for unpopular judicial acts or opinions. Such an hypothesis fails to consider two facts: First, that it is this Court which renders the ultimate decision in disciplinary matters, not The Florida Bar. Second, The Florida Bar as an arm of this Court is charged to act responsibly. If it acts irresponsibly this Court has the power and the duty to impose appropriate sanctions against the offending members.
OVERTON, C.J., and ENGLAND, J., concur.
BOYD, Justice (concurring in part and dissenting in part).
This is a landmark case of first impression. It is the duty of this Court in this unusual case to adopt procedures which will give justice and fairness to respondent as well as present and future former judges similarly situated.
I concur in that part of the majority opinion holding that the Supreme Court can discipline attorneys who are former judges for misconduct committed while serving in the judiciary. The Florida Constitution grants to this Court exclusive jurisdiction to discipline Florida attorneys.[1] The Constitution authorizes the Supreme Court to suspend justices or judges charged by the Judicial Qualifications Commission and upon recommendation of two-thirds of the members of such Commission to reprimand or remove a member of the judiciary.[2]
*719 The Constitution is silent on the question of discipline of members of The Florida Bar for misconduct committed while formerly serving in judicial office. The problem is unique because it has long been generally understood that the Bar would initiate disciplinary action against lawyers and the Judicial Qualifications Commission would move against judges. Before the Commission was created this Court held that the Bar could not institute action against an incumbent judge for his conduct while serving as a lawyer prior to becoming a judge.[3]
Recognizing that the power to discipline both lawyers and judges is vested in this Court, it seems that the constitutional intent is to permit this Court to discipline former judges now practicing law for improper conduct committed while on the bench, if such actions render them unfit to practice law. Applying the above reasoning to this particular case, I agree that this Court has constitutional authority to consider respondent's conduct while a Justice of this Court and a judge of the Fourth District Court of Appeal, in order to determine whether he is presently qualified to practice law.
I must dissent to that part of the majority opinion authorizing the Bar to initiate charges of misconduct against former judges for their conduct while in judicial service without prior specific approval of this Court. The Florida Bar performs a useful service to this Court and to the public in maintaining high standards of professional conduct, but I consider the majority opinion extremely detrimental to independence in the judicial system. The very nature of judicial service requires judges to displease and often offend at least half the litigants and their attorneys. Many of the losing attorneys are on grievance committees and are present or future leaders of the organized Bar. Frequently a judge does not fully explain the legal and factual basis of his decisions and if he did the losing attorneys might be even more dissatisfied. In many communities "peoples' judges" are not admired by the Bar and although they are elected by voters, never gain popularity with the Bar. Secret polls show that all judges have some lawyers who consider them unqualified and the standings of judges, from year to year, rise and fall. To permit the Bar, without specific direction and authority of this Court, to initiate proceedings against former judges who may have been regarded as incompetent, autocratic, lazy, or otherwise to have misbehaved while serving as judges, is detrimental to the public and litigants. For example, if a timid judge is about to leave office to practice law and a powerful and influential lawyer is opposing the efforts of an inexperienced and obscure lawyer, the litigants on both sides should never feel the judge might be intimidated to render a decision for the powerful lawyer out of fear of reprisal through the Bar after leaving the bench. Surely everyone everywhere has done something controversial and it would normally be rather easy to find something in any judge's personal or official life about which to file a complaint.
If we lived in Utopia or Shangri-La one might expect there to be absolute fairness and justice toward former judges, but this is the imperfect world of reality. Philosophers unfamiliar with politics might reason that if unfair allegations should be made by a local grievance committee the affected former judge would not suffer because the charges would soon be quashed. At a time of government in the sunshine with inner secrets of the Central Intelligence Agency and Federal Bureau of Investigation being exposed to the whole world, surely no secrecy would protect investigation of a former judge. The investigation would be newsworthy. Even if the charges were found to be without merit the investigation could cause irreparable harm.
*720 Society's best interests require that incumbent judges be free from harassment by any segment of the Bar after leaving office, except with specific prior approval of this Court. Whenever the Bar wishes to investigate a former judge for misbehavior stemming from a judicial or non-judicial act which occurred while he was in office, a confidential petition should be filed with this Court and a copy served upon the former judge. Only after a showing in camera that such investigation was required should this Court authorize the Bar to proceed in specifically designated areas.
A judge should leave office normally with a presumption that he or she is competent and worthy to practice law. If all of their acts over the years while in the judiciary are to be subject to discipline by the Bar, self-preservation could cause a timid or weak judge to be influenced to decide cases to prevent future attacks from the Bar. There is also a presumption that if a judge is doing wrong the Judicial Qualifications Commission or the Legislature would act against him while in office.
In considering the majority opinion we must not overlook the constitutional provisions which place upon judges standards of discipline far greater than other state officials.[4] In addition to being subject to suspension, reprimand and removal from office, justices and judges may also be impeached in the same manner as the Governor, Lieutenant Governor and Cabinet officers.[5] A member of the Legislature may be punished only by the house in which he or she serves for contempt or disorderly conduct and be expelled by two-thirds vote.[6]
The above constitutional provisions clearly demonstrate that if a Cabinet officer, a member of the Legislature and a judge were all tried for joint misconduct by the Legislature and all three were found wholly without fault, the Cabinet officer and Legislator would not be subject to further discipline for misconduct in office, but the judge could be charged by the Judicial Qualifications Commission and suspended, reprimanded or removed from office by the Supreme Court special panel hearing the matter. If a Justice or judge *721 had been exonerated by this Court, he could still be removed from office by the Legislature for the same charges. Without lengthy discussion of double jeopardy, res judicata or equal protection of the law, it should appear that sufficient burdens now rest upon Florida Justices and judges without making them directly accountable to The Florida Bar for all conduct while on the bench. If they escape the discipline of the Judicial Qualifications Commission and the Legislature for improper conduct while in office, they should be subject to Bar actions against them only after careful screening by this Court.
The people of Florida, through Article V of the Florida Constitution, have vested this Court with exclusive authority to admit, discipline and expel members of The Florida Bar. The Florida Bar was not created by the Constitution but rather by order of this Court. As an arm of this Court, the Bar has the responsibility of assisting the Court in maintaining high standards of conduct in the profession. I am personally distressed over the emerging tendency of this Court to approve recommendations of the Bar concerning discipline of lawyers without full recognition of the growing power of the Bar, a power which is peculiarly susceptible to abuse since the Bar is not directly accountable to the people of Florida. The historical role of the Bar in presenting matters to this Court concerning lawyers has been prosecutorial in nature. It is the duty of this Court to be clinically objective in dealing with such matters.
The majority opinion tends to create a new relationship between the bench and Bar in this State and will encourage the Bar to keep records on all judges in order that they may be disciplined by the Bar after leaving the bench if their conduct while on the bench is found unacceptable. Incompetent members of the judiciary will be encouraged to remain in office as long as possible, while competent attorneys may choose to avoid judicial service. I sincerely believe that this majority opinion will be highly detrimental to the judiciary, to the legal profession and to the public.
Applying the above standards to this case, I would enter an order specifying which areas of respondent's conduct, if any, may be investigated by the Bar and in future cases I would require the Bar to submit a confidential petition before such an order would issue.
ROBERTS, J., concurs.
ROBERTS, Justice (dissenting).
I cannot concur in the majority opinion. As the author of the Florida Judicial Qualifications Commission section of the constitution and as the one who sponsored it through the Florida Legislature, making all committee appearances, and then presenting it to the people of Florida as a constitutional amendment, this author knows that the majority opinion produces a result at substantial variance from the result for which the Commission was created. It was the clear intention of the author-sponsor that the Judicial Qualifications Commission and the Legislature would have the exclusive jurisdiction (other than the criminal court) to try alleged judicial misconduct. This is clearly reflected in Article V, Section 12(g), of the Florida Constitution, which says:
"The power of removal conferred by this section shall be both alternative and cumulative to the power of impeachment and to the power of suspension by the governor and removal by the senate."
Having thus spoken to the question of jurisdiction and providing two methods of review, there must be a clear application of expressio unius est exclusio alterius, or having spoken to the question, no other body or organization has jurisdiction to review alleged judicial misconduct. The authority of The Florida Bar is to pursue violations of the Code of Professional Responsibility *722 by persons engaged in the practice of law. When the Respondent was performing service as a member of the Supreme Court of Florida, he was not practicing law and indeed could not have done so because the Florida Constitution, Article V, Section 13, provides:
"All justices and judges shall devote full time to their judicial duties. They shall not engage in the practice of law or hold office in any political party." (Emphasis supplied)
Since the Constitution clearly distinguishes between discipline of persons engaged in the practice of law and discipline of judges for judicial misconduct, it takes a wide stretch of the imagination to extend the jurisdiction of The Florida Bar to judicial misconduct. The entire rationale of the Judicial Qualifications Commission as authored and sponsored was that the Judicial Qualifications Commission plus the limited jurisdiction of the Supreme Court would have jurisdiction shared only with the State Legislature in reviewing the conduct of the judiciary and The Florida Bar with the jurisdiction of the Supreme Court would have the exclusive jurisdiction shared only with the Circuit Courts to review alleged professional misconduct while engaged in the practice of law. Nor am I persuaded by the precedents cited in the exhaustive majority opinion that flow from jurisdictions which did not have at the time of the decision a Judicial Qualifications Commission or comparable tribunal. For example, Gordon v. Clinkscales, 215 Ga. 843, 114 S.E.2d 15 (1960)  The Georgia Qualifications Commission was created twelve years after this decision; In re Stolen, 193 Wis. 602, 214 N.W. 379 (1927)  Wisconsin as of this date does not appear to have a Judicial Qualifications Commission nor a related tribunal; Jenkins v. Oregon State Bar, 241 Or. 283, 405 P.2d 525 (1965)  The decision preceded by two years their Judicial Qualifications Commission which was adopted in 1967; Oklahoma Bar Association v. Tallent, 299 P.2d 162 (Okl. 1956)  Their Court on the Judiciary was established in 1966, ten years after the cited decision; In re Piper, 534 P.2d 159 (Or. 1975)  The judge was charged directly with the practice of law while holding a judicial office in violation of the Oregon Constitution and the complaint was made jointly by the Commission on Judicial Fitness (their Judicial Qualifications Commission) and the Trial Board of the Oregon State Bar. The facts are entirely different in that the misconduct was while engaged directly in the practice of law and did not charge any other judicial transgression; In Re Sisemore, 534 P.2d 167 (Or. 1975)  Judge Sisemore was a part of the transgression of Piper, supra, in that he and Piper were working together in Piper's unlawful practice of law;[*]State ex rel. Oklahoma Bar Association v. James, 463 P.2d 972 (Okl. 1969)  At first blush, this would appear to support the majority view, but not so. Reference Article 7-A, Section 4(d), Constitution of Oklahoma, which says: "... but such a proceeding, regardless of result, shall not bar or prejudice any other proceeding, civil or criminal, authorized by law." Thus, the Constitution of Oklahoma left wide open the door for action by the Oklahoma Bar, whereas the Florida Judicial Qualifications section of the Constitution closed the door by limiting such action to the Judicial Qualifications Commission or the State Legislature. The decision has no application in this case. (Emphasis supplied)
So, therefore, all of the precedents upon which the majority rely as a foundation fall for the reasons hereinabove stated and the majority view has no support in precedent or logic.
The objective of the Judicial Qualifications Commission and the Florida Legislature has been accomplished in that the Respondent is no longer a member of the judiciary. The jurisdiction of The Florida Bar is limited to misconduct occurring since *723 he left the judiciary and became a practicing member of The Florida Bar. For that reason, this Court should prohibit any action resting on conduct of the Respondent occurring while he was a member of the judiciary but without prejudice to the right of the Bar to proceed against him for misconduct, if any, before or after his judicial tenure.
ADKINS, J., concurs.
ADKINS, Justice (dissenting).
I dissent.
The dissenting opinion of Justice Roberts, the "father" of the Florida Judicial Qualifications Commission section of our Constitution, explains the inapplicability of the alleged precedents upon which the majority opinion relies. I concur in Justice Roberts' opinion.
In this proceeding we are not concerned with the merits or demerits of the grievance against petitioner. This Court is concerned only with a question of law: Under the Constitution of Florida and the Rules of this Court, does The Florida Bar have the authority to recommend that a retired or resigned judge be reprimanded or disbarred for conduct while holding judicial office?
In my opinion it is incumbent upon this Court to maintain the independence of the judiciary so that every county court judge, circuit judge, and appellate judge may make judicial and administrative decisions without thought or fear of possible retribution or reprisal by any attorney filing grievance procedure or The Florida Bar entertaining such grievance procedure. In expressing my sincere belief that all judges should conduct their court without any possibility of outside intimidation, I have some idea of the emotional and practical problems facing John Adams as he defended the British soldiers accused in the Colonial court for their involvement in the Boston massacre. Devotion to the betterment of the judicial system by insulating the independence of the judiciary should not be determined, swayed, or guided by public opinion or political pressure.
An attorney is an officer of the court and subject always to the appropriate orders and judgments of the court. Upon motion of the state attorney, a circuit judge has the right to disbar or reprimand an attorney under appropriate circumstances. Any reprimand or disbarment recommended by The Florida Bar is ineffective unless approved and ordered by this Court. Under the majority opinion we have this anomalous situation: All attorneys are under the supervision of this Court (in fact The Florida Bar was created by this Court) and all judges are under the indirect supervision of The Florida Bar.
Under the majority opinion, any attorney would have the right to institute grievance procedures against the judge who resigns or retires, even though the attorney himself may have been before the judge on disciplinary matters. In other words, he who judges may then be judged if he lives until retirement or resignation.
It is said that the attorneys and The Florida Bar will "act responsibly" so that the rule pronounced by the majority opinion will be properly enforced. I do not quarrel with the desire of The Florida Bar and any attorney to act in a responsible way and with good motive. However, no legal principle of such magnitude should depend upon the good intentions of others for its proper enforcement. The possibility of abuse is sufficient to chill the free exercise of judgment by members of the judiciary.
Under the basic principle of "checks and balances" inherent in our form of government, some other branch should be given control of The Florida Bar. Otherwise, under the procedure established by the majority opinion, the justices required to regulate and control The Florida Bar are *724 themselves subject to disciplinary proceeding by The Florida Bar upon retirement or resignation. This chills the free exercise of judgment. For that reason, control of The Florida Bar and the discipline of attorneys should be in the legislative branch. The Supreme Court should not be expected to exercise disciplinary control over The Florida Bar when that organization has ultimate control over the justices of the Supreme Court.
I do not mean to imply that a judge enjoys absolute immunity. If he is impeached or convicted of an offense after suspension, retirement, or resignation, then the fact of impeachment or the fact of conviction would be ground for disciplinary action.
Furthermore, the majority opinion has not considered the status of a retired judge. If a judge retires and The Florida Bar institutes disciplinary proceedings, such proceedings would be proper under the majority opinion though he may be recalled for judicial service. On the other hand, The Florida Bar has no jurisdiction to discipline a person who is acting as a judge. When the retired judge is assigned to a case, is he subject to disciplinary proceedings brought by the attorneys after judgment is entered? Would this have a chilling effect upon the judge's free exercise of his judgment?
If a judge serves the judiciary without removal, it must be presumed that he was fit to serve the public as a judge. However, upon resignation or retirement, such a judge is subject to a proceeding by The Florida Bar which may question his fitness to serve the public as an attorney. This is odd, to say the least.
The possibility of an accusation and the resulting proceeding are of sufficient magnitude to cause the judge great concern while on the bench regardless of the ultimate decision in such a proceeding by this Court.
We are, unfortunately, subjugating the judiciary to the attorneys so that any attorney unhappy with a judicial decision could complain to The Florida Bar, who will then become the "Big Daddy" of the judicial system.
NOTES
[1] These allegations were set forth in a notice of hearing dated October 2, 1975, as follows:

I. Interfering with, impairing and obstructing the proper administration of justice through improper attempts to influence the outcome of cases pending in the Courts of Florida.
II. Demonstrating bias, favoritism, and partiality toward certain attorneys and litigants and allowing those feelings to significantly influence your acts, decisions and judgments.
III. Soliciting and receiving unlawful compensation from a litigant before you in exchange for your favorable judgment.
IV. Failing to recuse yourself from judging litigation in which you had a personal interest.
V. Soliciting campaign contributions from attorneys engaged in litigation before you.
VI. Placing yourself in a compromising position by entering into business transactions which reflected adversely on your impartiality, interfered with the proper performance of your duties and improperly involved you with attorneys and persons with pending litigation before your Court.
VII. Engaging in conduct contrary to honesty, justice and good morals, the reasonable and probable consequences of which degraded your office and brought the Supreme Court of Florida into disrespect and prejudiced public confidence in the administration of justice in Florida.
These allegations lack the detail required to be set forth in a complaint filed pursuant to Rule 11.06(5)(a), Integration Rule. At this juncture, no complaint has been filed in the present proceedings.
[2] Rule 11.05(2), Integration Rule, provides in part, as follows:

The Board of Governors of The Florida Bar, sua sponte... may by majority vote find probable cause and direct the filing of a formal complaint against an attorney... . Provided, however, that if such finding is not based upon grievance committee investigation or report of bar counsel in pending proceedings against the accused, then before such finding is made the accused shall be advised in general terms the nature of the conduct which is being considered, and he shall be given an opportunity to make a statement, personally or by counsel, verbally or in writing, sworn or unsworn, explaining, refuting or admitting the alleged misconduct.
[3] The Court's logic does not apply to disciplinary proceedings where disbarment is not a possibility. See In re Mussman, 112 N.H. 99, 289 A.2d 403 (1972). As to misconduct occurring on or after November 1, 1966, however, the question of discipline short of disbarment has been mooted by creation of the Judicial Qualifications Commission, as all similar questions having to do with Integration Rule proceedings against sitting judges have been mooted. See Fla. Const. art. V, § 12 (1974); State ex rel. Turner v. Earle, 295 So.2d 609 (Fla. 1974).
[1] Article V, Section 23, Florida Constitution.
[2] Article V, Section 12(a), Florida Constitution.
[3] In re Proposed Disciplinary Action, 103 So.2d 632 (Fla. 1958).
[4] Article III, Section 17 and Article V, Section 12(a), Florida Constitution.
[5] Article III, Section 17, Florida Constitution.

"SECTION 17. Impeachment. 
(a) The governor, lieutenant governor, members of the cabinet, justices of the supreme court, judges of district courts of appeal and judges of circuit courts shall be liable to impeachment for misdemeanor in office. The house of representatives by two-thirds vote shall have the power to impeach an officer. The speaker of the house of representatives shall have power at any time to appoint a committee to investigate charges against any officer subject to impeachment.
(b) An officer impeached by the house of representatives shall be disqualified from performing any official duties until acquitted by the senate, and unless the governor is impeached he may by appointment fill the office until completion of the trial.
(c) All impeachments by the house of representatives shall be tried by the senate. The chief justice of the supreme court, or another justice designated by him, shall preside at the trial, except in a trial of the chief justice, in which case the governor shall preside. The senate shall determine the time for the trial of any impeachment and may sit for the trial whether the house of representatives be in session or not. The time fixed for trial shall not be more than six months after the impeachment. During an impeachment trial senators shall be upon their oath or affirmation. No officer shall be convicted without the concurrence of two-thirds of the members of the senate present. Judgment of conviction in cases of impeachment shall remove the offender from office and, in the discretion of the senate, may include disqualification to hold any office of honor, trust or profit. Conviction or acquittal shall not affect the civil or criminal responsibility of the officer."
[6] Article III, Section 4(d), Florida Constitution.

"SECTION 4. Quorum and procedure. 
* * * * *
"(d) Each house may punish a member for contempt or disorderly conduct and, by a two-thirds vote of its membership, may expel a member."
[*] Judge Sisemore received a public reprimand.