361 So.2d 700 (1978)
THE FLORIDA BAR, Complainant,
v.
David Lucius McCAIN, Respondent.
No. 52068.
Supreme Court of Florida.
June 15, 1978.
Rehearing Denied September 11, 1978.
*701 Bernard H. Dempsey, Jr., Bar Counsel, Orlando, and Wilson J. Foster, Jr., Asst. Bar Counsel, Tallahassee, for complainant.
R.J. Beckham of Beckham, McAliley & Proenza, Jacksonville, for respondent.
HATCHETT, Justice.
Under the Integration Rule of The Florida Bar, the Board of Governors, serving as an adjunct or administrative agency of this Court, may initiate disciplinary proceedings against an attorney for any improper act bearing on his current fitness to practice law, even when that act occurred while such attorney held judicial office. The Florida Bar v. McCain, 330 So.2d 712 (Fla. 1976). In accordance with this rule, the Bar proceeded against David Lucius McCain, a former Justice of the Supreme Court of Florida, charging him with various acts of misconduct, the more significant of which will be discussed hereafter. The Referee, appointed by the Bar, found McCain guilty of those acts charged in Counts 3A and 3C of the Bar's Second Amended Complaint,[1] and as to each of these counts, *702 recommended that he be "publicly reprimanded and suspended from the practice of law for one year and thereafter until he proves rehabilitation in accordance with Integration Rule 11.10(2)." By Petition for Review filed in this Court, The Florida Bar recommended disbarment. We approve the Findings of Fact and Conclusions of Law entered by the Referee but agree with the Bar that McCain should be disbarred.
David Lucius McCain began the practice of law in Florida in August, 1957, and continued that practice until August, 1967, when he was appointed to the Fourth District Court of Appeal. During that ten year period he served for several years as City Attorney for the City of Fort Pierce. At no time was McCain charged with misconduct as a practicing attorney. On December 10, 1970, he was appointed to the Supreme Court of Florida by Governor Claude Kirk, after being an unsuccessful candidate for the Court in 1968. He won election to the Court in 1972. In May, 1974, McCain was notified that the Judicial Qualifications Commission was conducting an investigation into certain alleged acts of misconduct committed by McCain while a judicial officer of this state. The Referee found that McCain did not receive notice of the filing of formal charges. In April, 1975, the Select Committee on Impeachment of the Florida House of Representatives also began an investigation of McCain. The findings of that committee served as the basis for the probable cause findings made by The Florida Bar's Board of Governors. Effective August 31, 1975, McCain resigned his position as a Justice of the Supreme Court of Florida.

COUNT 3A
On September 25, 1970, Richard Nell, a union official, was convicted of bribery. He appealed his conviction to the Second District Court of Appeal where the case was heard on June 10, 1971 by Chief Judge Pierce and Judges Mann and McNulty. In July, 1972, McCain, while a Justice of the Supreme Court of Florida, and while the Nell case was pending in the district court, called Judge McNulty about the case. Prior to making the call, McCain had been notified that he was going to be supported in his race for re-election to the Supreme Court by the International Union of Operating Engineers, the labor organization which Nell headed. McCain admits making the call to Judge McNulty, admits that the call concerned the Nell case, and admits that the call was made on behalf of Nell and their common friends and supporters. A factual issue is joined because McCain testified that he could not recall whether or not he asked Judge McNulty to reverse the conviction. Judge McNulty testified, however, that it was his clear impression that during the conversation McCain asked for a reversal of the case. William Haddad, Clerk of the Second District Court of Appeal, who at the time of the McCain call was a research aide to Judge McNulty, was present during the disputed telephone conversation and testified that Judge McNulty was upset about the call and told him that "Judge McCain was trying to influence the decision of the court."
The opinion of the Second District Court of Appeal was filed in the Nell case on September 6, 1972, affirming the conviction, with then Chief Judge Pierce dissenting. Nell v. State, 266 So.2d 404 (Fla. 2nd DCA 1972). Prior to the filing of that opinion, Judge McNulty reported the McCain call to his associate, Judge Mann.
*703 On September 20, 1972, a Petition for Writ of Certiorari was filed with the Supreme Court of Florida on behalf of Nell and the others convicted with him. Oral argument was heard on February 16, 1973. The records of the Supreme Court indicate that the file reached McCain on April 5, 1973, the other Justices having voted to reverse the District Court by a vote of four to two. McCain also voted for reversal. Nell v. State, 277 So.2d 1 (Fla. 1973). Judges Mann and McNulty were upset when they learned that McCain had participated in the decision, and one of them reported the matter to a member of the Judicial Qualifications Commission.
As to this count, the Referee found: When Justice McCain contracted Judge McNulty by telephone, he willfully and intentionally attempted to tamper with the administration of justice by making an effort to influence the decision of the Second District Court of Appeal in the Nell case. In doing so, McCain committed this act with the corrupt motive of attempting to retain and improve upon the political support he expected from the union, of which Nell was the chief executive. This violation of the ethics of his profession was so gross in nature, that I find that it bears upon his current fitness to practice law.

COUNT 3C
From 1965 to 1970, Burton Loebl, a North Miami Beach attorney was counsel for the Estate of Robert T. David. Sometime prior to July, 1972, Loebl turned the file over to another attorney, ending his participation in the case. In July, 1972, a petition for determination of Loebl's attorney's fees was filed and the matter was set for hearing before County Court Judge Leroy H. Moe. The petition involved $10,000 of final fees for Loebl's work on behalf of the estate. At about this time, McCain was campaigning for the Supreme Court and was supported in that effort by Loebl. The hearing on attorney's fees was continued several times because of the court's workload but was finally set for hearing on November 2, 1972. An attorney retained by Loebl filed a motion for continuance, and hearing on that motion was set for October 30, 1972. Both Loebl and McCain agreed that in late October, following the 1972 election, they had a conversation about the David Estate in which was pending Loebl's petition for attorney's fees. On October 28, 1972, McCain, knowing that Judge Moe would be hearing all matters on the Estate of David, and aware that a hearing was scheduled on Loebl's claim for fees, contacted Judge Moe by telephone. During that conversation McCain made clear to Judge Moe that Loebl was a personal friend and political supporter. Judge Moe specifically recalled that McCain told him that any help he could give Loebl would be appreciated. McCain claims that he made the telephone call to Judge Moe because Loebl feared unfair treatment in Broward County "since he was Jewish and practiced in Miami Beach." Loebl testified that he had no such fear and did not ask McCain to make the call.
As to the David Estate matter, the Referee found:
I find that McCain, while serving as a Justice of the Supreme Court of Florida, intentionally and corruptly attempted to tamper with and influence the results of a motion pending before Judge Moe in this case. This act was committed with the corrupt motive of doing a favor for Loebl as reward for his political support of McCain. I find that this violation of the ethics of our profession was so gross that it bears upon McCain's current fitness to practice law.

COUNT 3D
On June 8, 1968, Louis Zacchary Cohen was found guilty of possession of marijuana in such quantity as to constitute a felony. Judge Trowbridge, Circuit Judge for the 19th Judicial Circuit, presided during the trial. Upon conviction of Cohen, Judge Trowbridge withheld adjudication of guilt and sentenced Cohen to a term of four years probation. According to one of the lawyers in the case, immediately following *704 imposition of sentence, Wolfie Cohen, the father of Louis, and a well known politician in Miami, urged that an appeal be taken since Judge McCain was a friend and would "take good care of us if we filed an appeal." The lawyer persuaded Mr. Cohen not to take an appeal since a new trial could result in a more severe sentence.
In the summer of 1969, McCain, while a Judge of the Fourth District Court of Appeal, was contacted by Wolfie Cohen, described by McCain as an acquaintance, who told him that his son, Louis, was greatly handicapped in his efforts to complete his education by his four year period of probation. Cohen asked McCain to intercede in this matter and to help get his son's period of probation terminated. McCain admits calling Judge D.C. Smith by telephone and inquiring of Judge Smith as to the procedure involved in procuring a termination of probation. Judge Smith was unable to recall any details of that conversation. Judge Smith's testimony, however, was that he never abdicated his judicial responsibility in any matter. Soon after the McCain telephone call, Judge Smith entered an order terminating Cohen's probation. Although Judge Smith does not remember the details of the conversation with McCain, the then probation supervisor for the Florida Parole Commission, J. Vernon Wright, testified that he had a conversation with Judge Smith in which Judge Smith stated that McCain wanted Louis Cohen's probation terminated.
As to this allegation the Referee found: I find no clear and convincing evidence that McCain asked Judge Smith to secure a termination of Cohen's probation. I find no clear and convincing evidence that McCain acted improperly in this matter. Nor do I find that McCain acted with any corrupt motive in making telephone calls to Judge Smith.
The Bar urges us to overturn this finding by the Referee. It asserts that the evidence detailed above is clear and convincing proof of McCain's corrupt motive in making the telephone call to Judge Smith in an effort to terminate Cohen's probation. We agree with the Referee that the evidence does not meet the requisite standard of proof.
In addition to his findings on each specific allegation of misconduct, the Referee concluded that the charges against McCain were not barred by the operation of a statute of limitations or by the equitable principles of laches or estoppel. McCain challenges both conclusions.

STATUTE OF LIMITATIONS
The strongest authority for the proposition that a statute of limitations applies in a disciplinary case involving a judge or former judge, is found in State ex rel. Turner v. Earle, 295 So.2d 609 (Fla. 1974):
The Judicial Qualifications Commission may investigate the alleged misconduct of the Relator . .. within the reasonable time backwards but not exceeding two years behind the date upon which he assumed new duties having been elected Circuit Judge in the 1972 election, ... (at 619)
The holding in Turner is not binding here. In that case we specifically stated:
All dictum in this opinion must be read in the context of the circumscribed facts and not considered a precedent in cases involving different facts. The purpose of the dictum is merely to show the expanse of the total research and the logic supporting the judgment dispositive of the facts in the Turner case and of no other. (at 619)
There is no express statute of limitation governing attorney discipline proceedings. The statutory bar against actions at law has no application in a disbarment proceeding.[2]

*705 The statute of limitations has no application to delinquencies such as have been shown to exist. The court, in such cases, will consider any unexplained, unreasonable delay in presenting the charges, and also whether, by reason of such delay, the accused has been deprived of a fair opportunity of securing proof to meet the accusation; but the proceeding for the disbarment of an attorney is not barred by the express terms of the statute of limitations, nor will the courts establish a limitation, as to the time in which such proceedings may be instituted, by analogy to the statute of limitations, unless, from the nature of the circumstances of the particular case, it appears that it would be unjust or unfair to require the attorney to answer as to such occurrences. People ex rel. Healy v. Hooper, 218 Ill. 313, 75 N.E. 896 (1905) at 899.
The Court in Turner felt that the statute of limitations on criminal charges was the "nearest thing to a declaration of public policy on the question of a reasonable time for investigation" into attorney discipline matters. Turner v. Earle, supra, at 618. We reject the notion that a statute of limitations on criminal charges expresses by public policy or otherwise a period of limitation for investigation of attorney misconduct. Our responsibility to the public requires a more flexible rule. Surely a judicial officer who leaves the bench and returns to the active practice of law must be free to do so without the fear that some alleged impropriety occurring many years before the date of leaving the bench may be brought up to haunt him in the practice of law. But, there is no reason, either in law, common sense or otherwise, to fashion a hard and fast statute of limitations governing the discipline of lawyers, who for a period, serve as judges. Lawyers' rights may be protected without a mechanical and automatic rule setting forth limitations for actions involving misconduct. We therefore hold that The Florida Bar shall have a reasonable time after it obtains jurisdiction to proceed against a lawyer who was a judge at the time of the alleged acts of misconduct. In the present case, the Bar began proceedings immediately following Justice McCain's resignation. All pending investigations were terminated upon that resignation. Although the acts upon which these disciplinary proceedings are based occurred three years prior to the date of resignation, we find that the Bar acted promptly.
In the final analysis, no former judge can be injured by the rule which we fashion today. The Florida Bar is an agency of this Court and under its direction. Whenever a lawyer feels that an unreasonable time has passed since the alleged misconduct for which the bar brings charges, this Court will be open to address that problem. After all, The Florida Bar acts for and is an agency of this Court. When the child falters the parent shall correct.

LACHES
McCain next asserts that if a statute of limitations does not apply to bar these proceedings, the equitable principle of laches does.
A suit is held to be barred on the ground of laches where, and only where, the following appear: (1) Conduct on the part of the defendant, or one under whom he claims, giving rise to the situation of which complaint is raised; (2) delay in asserting the claimant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute the suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant. All these elements are necessary to establish *706 laches as a bar to relief. 21 Fla.Jur. Limitation of Actions, Section 94.
The Courts of Florida have, in a long line of cases, held these elements necessary to constitute laches. Niagara Fire Insurance Co. v. Allied Electrical Co., 319 So.2d 594 (Fla. 3rd DCA 1975); Winston v. Dura-Tred Corp., 268 So.2d 426 (Fla. 3rd DCA 1972); Blumin v. Ellis, 186 So.2d 286 (Fla. 2nd DCA 1966); and Van Meter v. Kelsey, 91 So.2d 327 (Fla. 1956). The Florida Bar has been diligent in its efforts and does not fall within any of the requirements for laches set forth above. It was not until August 31, 1975, when McCain resigned, that the Bar could possibly have proceeded against him. Realistically, it was not until the filing of our opinion in The Florida Bar v. McCain, supra, on May 18, 1976 that the Bar knew to what extent and in what manner it could pursue disciplinary action against the former Justice. We therefore hold that The Florida Bar is not guilty of laches but has acted promptly in this matter and in the best interest of the people of this state.

ESTOPPEL
Finally, McCain asserts that the Bar is estopped from prosecuting this matter since the Judicial Qualifications Commission, after a full investigation, failed to bring formal charges against him. We disagree. As the Referee recorded:
This is the first opportunity this Court has had to inquire into McCain's fitness to practice law. It seems to me that there can be no estoppel arising from its failure to exercise its right to remove him from the judiciary through the medium of the Judicial Qualifications Commission nor do I believe that the State has waived any right connected with the prosecution of this matter by allowing McCain to resign in the face of impending or threatened impeachment. Referee's Report, page 14.
In 12 Fla.Jur. Estoppel and Waiver, Section 24, we find:
The essentials of an equitable estoppel may be briefly laid down as follows: (1) words and admissions, or conduct, acts, and acquiescence, or all combined, causing another person to believe in the existence of a certain state of things; (2) in which the person so speaking, admitting, acting, and acquiescing did so wilfully, culpably, or negligently; and (3) by which such other person is or may be induced to act so as to change his own previous position injuriously.
Our case law is in accord. Coogler v. Rogers, 25 Fla. 853, 7 So. 391 (1889); Barsumian v. Barsumian, 235 So.2d 515 (Fla. 4th DCA 1970). Estoppel does not apply to the facts of this case.
In The Florida Bar v. McCain, supra, we held:
We adopt for Florida the general rule that "misconduct in ... a judgeship, reflects upon an attorney's fitness to practice law and is consequently a proper ground for discipline." at page 715.
Having determined that the present prosecution is not barred by any period of limitations or by the doctrines of laches or estoppel, we must now decide whether McCain is presently fit to practice law in the State of Florida. The evidence presented by the Bar must be clear and convincing before we may find that the code of conduct governing lawyers has been breached. In The Florida Bar v. Rayman, 238 So.2d 594 (1970) at 598, we stated:
As judges and lawyers, it is one of our highest duties to eliminate from our ranks those guilty of so serious an offense. Concomitant therewith, however, we have a continuing duty to require charges such as these to be supported by clear and convincing evidence where the charges have been denied by reputable members of the Bar.
Initial fact-finding responsibility in disciplinary matters is imposed on the Referee and his findings should be upheld unless clearly erroneous or lacking in evidentiary support. The Florida Bar v. Wagner, 212 So.2d 770 (Fla. 1968). We have carefully reviewed the evidence and find that the Referee's report is supported by competent and substantial evidence. That evidence is clear and convincing. *707 We therefore approve the Findings of Fact and Conclusions of Law entered by the Referee and note that the time donated by the Referee and the professionalism he exhibited by the manner in which he conducted all aspects of this case are in accord with the highest ideals of our profession.
Finally, we must determine whether the punishment recommended by the Referee is sufficient in this case. We think not. The conduct engaged in by McCain while a Justice of the highest court of this state cuts to the very heart of the judicial system, a system carefully established to insure that equal justice under law prevails in this country for the rich and the poor, the powerful and the powerless. McCain's conduct has done much to erode the public's confidence in the integrity and impartiality of the judiciary and the bar, thus undermining the entire judicial process.
[T]here can be no temporizing with an offense the commission of which serves to destruct the judicial process. The Florida Bar v. Rayman, 238 So.2d 594 (Fla. 1970) at 598.
The following comment by Judge Moe underscores the damages of which we speak:
My reaction was the call was totally unnecessary, totally uncalled for, but, by the same token, I was a Judge of the County Judges Court, for maybe a little bit more than a year at that time, and here is a man on the Supreme Court of Florida, calling me about a case; as a matter of fact, just a motion for continuance in a case. Now, I had always been taught, through education, through legal training, through custom, tradition, history, what have you, that the Supreme Court of Florida is, let's say, the last repository of all knowledge concerning law, equity, procedure, and certainly ethics, and I didn't know if any other Judges were receiving phone calls. I did not know if this stuff went on. By "this stuff", I mean a higher Court Judge calling another Judge about a case pending in front of him. I certainly didn't think it went on. By the same token, it is almost like saying he is on the Supreme Court, he must be right. He must have some kind of reason. There must be some kind of procedural aspect of it that I don't understand. So, my reaction was really mixed. I couldn't see any reason for him interfering with the case before me, but yet, he was a Supreme Court Justice and so, it is like I said, I was taught to think, to believe what they do is right.
McCain's blatant disregard for the integrity of the truth finding process, essential to our notion of equal justice under the law, directly bears on his present fitness to practice law.
While we find that McCain has been shown by clear and convincing evidence to have committed the acts charged in Counts 3A and 3C, we must agree with the Referee that The Florida Bar took an excessively broad approach to this case and failed to early abandon counts that could not be proved. For this reason we find it inequitable to impose all costs of these proceedings upon McCain. Thus, each party shall bear its own costs.
Accordingly, the Referee's Report is approved in all respects except punishment, and David Lucius McCain is disbarred from further practice of law in the State of Florida, effective immediately.
It is so ordered.
OVERTON, C.J., and TEDDER, WILLIS and McCRARY, Chief Circuit Judges, concur.
ENGLAND, J., concurs with an opinion.
SUNDBERG, J., concurs with an opinion, with which ENGLAND, J., concurs.
ENGLAND, Justice, concurring.
I find from the record in this case, as do the other members of the Court, clear and convincing evidence to support the referee's findings as to Counts 3A and 3C. I differ with my colleagues, however, as to the degree of proof sustaining Count 3D, which I believe is also adequate to support disciplinary action. It goes without saying that I support the Court's decision on the discipline *708 appropriate for McCain, for all of the reasons expressed by Justice Hatchett.
I think there is value in identifying more precisely the reasons I have voted to uphold the referee's recommendation that we deny the Bar its costs of prosecution, some $25,908.76. The Bar originally found "probable cause" against McCain as to six generic acts of ethical misconduct.[1] Faced with the prospect of having all of its charges dismissed by the referee for their lack of specificity, the Bar filed an amended complaint and later a second amended complaint. The Bar later amended its complaint orally at a pre-trial conference, and further amended it by stipulation after five days of testimony at the final hearing.
Of the 20 specific acts of alleged misconduct which went to the referee after all evidence and testimony was presented, only two have been found to be supported by clear and convincing evidence to the satisfaction of either the referee or the Court. In its cross-assignment of error to this Court, the Bar expressed dissatisfaction with the referee's findings as to 6 of the 18 charges which were dismissed or stricken. It is apparently satisfied that the referee fairly evaluated the record as to the 12 other charges.
In considering the assessment of costs, the referee reported that
"[t]he Bar willfully undertook this most complex, expensive and time-consuming prosecution. It continued to prosecute this matter when it knew or should have known from the advice of Bar Counsel that it could not prove a large number of the charges set forth in its amended complaint or its second amended complaint... .
This entire matter was poorly and illogically planned by the Bar. It was laboriously presented before me at the final hearing. It has been largely a trial by insinuations, inferences, and innuendos accompanied by a minimum of evidence of a clear and convincing degree."
When this case was first here to prevent the Bar from exercising disciplinary control over McCain for his conduct while on the bench, I joined Justice Sundberg in his admonition to the Bar in connection with any disciplinary proceedings it might commence against former judicial officers:
"The Florida Bar as an arm of this Court is charged to act responsibly. If it acts irresponsibly this Court has the power and the duty to impose appropriate sanctions against the offending members."[2]
The Bar's absorption of its costs for this proceeding is clearly warranted.
SUNDBERG, Justice, concurring.
Because the discipline invoked by the Court in this case is materially more severe than that recommended by the Referee, I deem it necessary to elucidate the reason why departure from that recommendation is called for. In the first instance, it should be observed that the discipline appropriate to ethical misconduct is the sole province and responsibility of this Court. While the findings of fact by the Referee in a disciplinary proceeding "shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding,"[1] no similar presumption accompanies his recommendation of disciplinary measures to be applied. The burden upon The Florida Bar is to demonstrate that the report of the Referee is "erroneous, unlawful or unjustified."[2] In my judgment the report itself demonstrates that the recommended discipline is unjustified.
As to Count 3A of the Bar's Second Amended Complaint, the Referee found:
When Justice McCain contacted Judge McNulty by telephone, he willfully and intentionally attempted to tamper with the administration of justice by making *709 an effort to influence the decision of the Second District Court of Appeal in the Nell case. In doing so, McCain committed this act with the corrupt motive of attempting to retain and improve upon the political support he expected from the union, of which Nell was the chief executive. This violation of the ethics of his profession was so gross in nature, that I find that it bears upon his current fitness to practice law.
As to Count 3C of the Bar's Second Amended Complaint, the Referee found:
[M]cCain, while serving as a Justice of the Supreme Court of Florida, intentionally and corruptly attempted to tamper with and influence the results of a motion pending before Judge Moe in this case. This act was committed with the corrupt motive of doing a favor for Loebl as reward for his political support of McCain. I find that this violation of the ethics of our profession was so gross that it bears upon McCain's current fitness to practice law.
In short, the Referee found that a member of The Florida Bar, while serving in judicial office, willfully, intentionally, and with corrupt motive attempted to tamper with the administration of justice. Such misconduct by any member of the Bar, whether he be acting as judge or lawyer, is so inimical to the judicial system that nothing less than disbarment can vindicate the injury done. Such an act by a lawyer transcends the usual ethical breach where one or even several clients' funds are misappropriated or their case is mishandled. When a member of the Bar corruptly attempts to tamper with the administration of justice every citizen of our state is injured. This is so because, as has been often said, the courts have no army to enforce their judgments and decrees. The enforcement of judicial rulings is solely dependent upon their acceptance by the people. This acceptance will persist only so long as people have confidence in the institution which renders the decisions under which they must live. Some of the most unpopular judicial decisions in our history have been complied with because they are "the law of the land." The citizenry will only abide by the "law of the land" if they believe that it has been arrived at through a process which is free from corruption. The responsibility of a lawyer in this regard is set forth in Ethical Considerations 9-1[3] and 9-4,[4] Florida Bar Code of Professional Responsibility.
Consequently, the enormity of the act of a member of the Bar, whether judge or lawyer, who tampers with the system of justice is such that it demonstrates a total lack of fitness to be a minister of the system. How can one be a part of a system when he has demonstrated a willful intent to pervert that system? I submit that he cannot. To be a member of the Bar and an officer of the court is a high calling which bestows unique opportunities on one so endowed. However, there is an obligation which corresponds to the privilege of being a member of the Bar and it is best expressed in a passage from the book of our most fundamental laws:
... For unto whomsoever is much given, of him shall be much required: and to whom men have committed much, of him they will ask the more.[5]
Consequently, I concur in the judgment of guilt and disbarment as the appropriate discipline in this case notwithstanding the recommendation of the Referee.
ENGLAND, J., concurs.
NOTES
[1] A. Nell v. State, 266 So.2d 404 (2nd DCA Fla. 1972). Richard Nell, a Ft. Lauderdale labor union leader, was convicted of the bribery of a Collier County official. Nell took an appeal to the Second District Court of Appeal where the matter was assigned to a panel and set for argument on June 10, 1971, before Chief Judge William C. Pierce and Associate Judges Joseph P. McNulty and Robert T. Mann. In July, 1972, while the case was still under consideration by that panel, the Respondent telephoned Judge McNulty and told him of the interest of "some people" in Nell's case and communicated to Judge McNulty that a reversal of Nell's conviction would be appreciated.

C. In Re Estate of Robert T. David, 17065 (County Judge's Court, 19th Judicial Circuit, Broward County). On or about November 1, 1972, the Respondent telephoned Leroy H. Moe, then a judge of the County Judge's Court of Broward County. The Respondent identified himself as Mr. Justice McCain. He asked Judge Moe to look favorably upon a motion for continuance which was then pending before Judge Moe in the case. The Respondent caused Judge Moe to believe that it would be appreciated it [sic] Judge Moe would grant the motion for continuance. The Respondent told Judge Moe that the attorney who filed the motion for continuance, Burton Loebl, was the Respondent's campaign manager in North Dade County. As a result of the Respondent's telephone call, Judge Moe recused himself from the case.
The Referee acquitted McCain on all other charges and recommended that they be stricken or dismissed.
[2] Re Lowenthal, 78 Cal. 427, 21 P. 7 (1889); People ex rel. Stead v. Phipps, 261 Ill. 576, 104 N.E. 144 (1913); Re Elliott, 73 Kan. 151, 84 P. 750 (1906); Re Leonard, 127 App.Div. 493, 111 N.Y.S. 905 (1908), affirmed 193 N.Y. 655, 87 N.E. 1121 (1908); State ex rel. Grievance Committee v. Woerndle, 109 Or. 461, 209 P. 604 (1923); Wilhelm's Case, 269 Pa. 416, 112 A. 560 (1921); Re Simpkins, 169 App.Div. 632, 155 N.Y.S. 521 (1915); Ex Parte Tyler, 107 Cal. 78, 40 P. 33 (1895); People ex rel. Healy v. Hooper, 218 Ill. 313, 75 N.E. 896 (1905); Re Smith, 73 Kan. 743, 85 P. 584 (1906); Re Bridwell, 25 Utah 2d 1, 474 P.2d 116 (1970); Anne Arundel County Bar Assoc. v. Collins, 272 Md. 578, 325 A.2d 724 (1974).

See also, 3 Fla.Jur., Attorneys at Law, Section 104.
[1] See The Florida Bar v. McCain, 330 So.2d 712, 713 n. 1 (Fla. 1976). A seventh original charge (Count VII) alleged general unethical conduct based on the other generic acts of misconduct.
[2] The Florida Bar v. McCain, 330 So.2d 712, 718 (Fla. 1976) (Sundberg, J., concurring).
[1] Fla. Bar Integr. Rule, art. XI, Rule 11.06(9)(a).
[2] Fla. Bar Integr. Rule, art. XI, Rule 11.09(3)(e).
[3] Fla. Bar Code Prof.Resp., E.C. 9-1 provides:

"Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession."
[4] Fla. Bar Code Prof.Resp., E.C. 9-4 provides:

"Because the very essence of the legal system is to provide procedures by which matters can be presented in an impartial manner so that they may be decided solely upon the merits, any statement or suggestion by a lawyer that he can or would attempt to circumvent those procedures is detrimental to the legal system and tends to undermine public confidence in it."
[5] Luke 12:48 (King James).