PER CURIAM.
Albert C. Simmons petitions for review of a referee’s report finding him guilty of misconduct and recommending a one-year suspension from the practice of law. We have jurisdiction.*
The referee made the following findings of fact:
Respondent was retained to represent an individual by the name of C.P. Adkins in a criminal case prior to March, 1989. Mr. Adkins’ case was set for trial during the month of April, 1989. Respondent, prior to March 28, 1989, had been provided a list of the venire which would be used to pick the jury for the C.P. Adkins trial.
Respondent, on or about March 28, 1989, made a telephone call to an individual by the name of Linda Barnes. Linda Barnes’ name was on the list for the venire which had been provided to Respondent for the C.P. Adkins trial. During the course of the telephone conversation between Respondent and Linda Barnes, Respondent informed Ms. Barnes that she was going to be called upon to be part of the venire from which the jury would be picked for his client’s case.
Ms. Barnes was not previously aware that she was to be called for jury duty. Respondent told Ms. Barnes that he wanted her on his jury for the C.P. Adkins trial, that he was defending C.P. Adkins, and he did not want her to “get off the jury.” Respondent also told Ms. Barnes that he would not request that she be taken off the jury and engaged in a discussion about what she should and should not say if questioned by the State during voir dire.
On March 28, 1989, Assistant State Attorney Joseph Smith and State Attorney Investigator Robert McCallum were contacted by Myrtis Colson, Protective Services Supervisor, Department of Health and Rehabilitative Services, Trenton. Mrs. Colson said that one of her investigators had telephoned the home of Linda Barnes regarding a Health and Rehabilitative Services case involving that family. When the number of Linda Barnes was dialed by the investigator, an answering machine answered the call and instead of taking a message it began playing recorded messages and conversations back over the telephone to the caller.
Ms. Colson called the number and listened to a conversation between Attorney Albert C. Simmons and Linda Barnes, whereupon Ms. Colson felt she must report it to the Office of the State Attorney immediately, and did so.
At approximately 10:41 a.m. on March 28, 1989, Joe Smith and Robert McCal-lum called Linda Barnes’ telephone num *156 ber and heard the same recording. At the conclusion of listening to the recording, Robert McCallum then recorded the conversation on a blank cassette tape to be used as evidence. Subsequently, Mr. McCallum and Mr. Smith notified the State Attorney, and requested that he listen to the recording.
On the afternoon of March 28, 1989, representatives of the State Attorney’s Office went to the mobile home of Linda Barnes and confiscated the answering machine and tape of the conversation. An interview by the State Attorney’s Office investigators was conducted with Linda Barnes in which she confirmed the conversation with Respondent.
The referee recommended that respondent be found guilty of violating the following Rules Regulating The Florida Bar: rule 3-4.3 (the commission by a lawyer of any act which is unlawful or contrary to honesty and justice); rule 4-3.5(d)(1) (a lawyer shall not before the trial of a case with which he or she is connected, communicate or cause another to communicate with anyone he or she knows to be a member of the venire from which the jury will be selected); rule 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and rule 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).
The referee recommended a one-year suspension, rejecting the joint recommendation of The Florida Bar and respondent of a ninety-one day suspension with proof of rehabilitation.
Respondent argues that the referee erred in rejecting the agreement between The Florida Bar and respondent. Respondent asserts that the referee misconstrued the conversation between respondent and Ms. Barnes by erroneously finding that respondent told Ms. Barnes what to say and what not to say. Respondent further argues that the referee ignored all the mitigating circumstances, with the exception of respondent’s many years of practice without prior discipline. For example, he cites personal or emotional problems, full and free disclosure of the criminal investigation to the disciplinary board, a cooperative attitude toward these proceedings, absence of a dishonest or selfish motive, and interim rehabilitation and remorse.
It is the function of the referee to weigh the evidence and determine its sufficiency, and we will not reweigh the evidence or substitute our judgment for that of the referee unless it is clearly erroneous or lacking in evidentiary support. E.g., The Fla. Bar v. Scott, 566 So.2d 765, 767 (Fla.1990). After carefully reviewing the record, we find that the referee’s findings of fact and recommendations as to guilt are supported by substantial, competent evidence. We therefore approve the findings of fact and conclusions of law of the referee.
We likewise approve the referee’s recommendation of a one-year suspension. Despite the mitigating factors presented and that respondent has practiced law for twenty-two years without prior discipline, we cannot “overlook the magnitude” of his misconduct. The Fla. Bar v. Kickliter, 559 So.2d 1123, 1124 (Fla.1990). Respondent’s contact with a member of the venire, his attempt to make sure she stayed on the venire, and his efforts to establish a juror friendly to the defense (should she be seated on the jury) “cuts to the very heart of the judicial system,” which respondent is sworn to uphold. The Fla. Bar v. McCain, 361 So.2d 700, 707 (Fla.1978). Respondent not only acted with a dishonest motive, but his conduct was prejudicial to the administration of justice and it compromised the sanctity of the jury, which is the cornerstone of the justice system. “ ‘[TJhere can be no temporizing with an offense the commission of which serves to destruct the judicial process.’ ” Id. at 707 (quoting The Fla. Bar v. Ragman, 238 So.2d 594, 598 (Fla.1970)). Such misconduct warrants a more severe sanction than a ninety-one-day suspension. Ordinarily, this type of of *157 fense would warrant disbarment. The referee’s recommendation, however, carries great weight. The referee had the opportunity to see and hear respondent and weigh the mitigating factors against the seriousness of the offense. We are persuaded that his conclusion should not be disturbed.
Accordingly, we approve the referee’s report. Respondent is hereby enjoined and prohibited from the practice of law in this state for a period of one year. In order to protect his clients and close out his practice in an orderly fashion, this suspension is effective thirty days from the date this opinion is filed. Respondent will accept no new business after the filing date of this opinion. Judgment is entered against respondent for costs in the amount of $1,476.46, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.

 Art. V, § 15, Fla. Const.