737 So.2d 1069 (1999)
THE FLORIDA BAR, Complainant,
v.
Kevin Kitpatrick CARSON, Respondent.
No. 91,550.
Supreme Court of Florida.
May 20, 1999.
Rehearing Denied August 16, 1999.
*1070 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Patricia Ann Toro Savitz, Bar Counsel, Orlando, Florida, for Complainant.
Kevin Kitpatrick Carson, pro se, Daytona Beach, Florida, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Kevin Kitpatrick Carson. After two hearings, the referee recommended that Carson be diverted to a practice and professionalism enhancement program pursuant to rule 3-5.3 of the Rules Regulating The Florida Bar and that Carson be required to pay the costs of the disciplinary proceedings. We have jurisdiction. See art. V, § 15, Fla. Const.
The disciplinary process first began when, on March 27, 1996, attorney Charles Holloman, on behalf of respondent Carson, filed a bar complaint alleging that another attorney, Steven Vasilaros, improperly disbursed "a portion of the proceeds from a personal injury action to himself after being placed upon notice that a portion of the fee was disputed as to ownership." The complaint further explained that the disputed portion of the proceeds was a twenty-five percent "referral fee" claimed by Carson and asked that the Bar investigate the matter and "sanction the appropriate individuals."
Subsequent to that complaint filed on Carson's behalf, on October 8, 1997, the Bar filed a formal complaint against Carson, alleging that between 1992 and 1995, Carson had referred clients to Vasilaros, that Carson and Vasilaros had entered into an oral agreement for a twenty-five percent referral fee in three cases, that Carson had performed no legal services in any of these cases, and that none of the clients had ever agreed in writing to the payment of a referral fee to Carson. The complaint also alleged that after one of the cases was settled, Vasilaros paid Carson a referral fee of $650, which represented twenty-five percent of the total attorney's fees recovered. Finally, the complaint alleged that after another of these cases was settled, Carson contacted Vasilaros about the payment of the referral fee, but Vasilaros refused to pay such a fee because the agreement had not been reduced to writing and signed by the client.
Instead, Vasilaros' law partner filed a motion for determination of attorney's fees to ascertain whether Carson was entitled to a referral fee. On March 18, 1996, the circuit court ruled that Carson was not entitled to receive a referral fee in the case, and on appeal, the Fifth District Court of Appeal affirmed without an opinion. See Carson v. Vasilaros, 681 So.2d 1154 (Fla. 5th DCA 1996).
As a result of the conduct described above, the Bar charged Carson with violating rule 4-1.5(f)(2) of the Rules Regulating The Florida Bar "for participating in a fee without the consent of a client in writing and for failing to agree to assume joint legal responsibility to the client for the performance of the services in question as if each of the participating lawyers were partners of the other lawyers involved."
After an evidentiary hearing, the referee submitted a report, the "Narrative Summary" portion of which stated:

*1071 The respondent failed to comply with the requirements of Rule of Professional Conduct 4-1.5(f) and (g). He had an oral agreement for referrals in contingent fee cases, has made referrals and has received money under this oral agreement, and has pursued entitlement to referral fees through the courts. He himself brought this matter to the attention of the Bar and admits he was ignorant of the Bar Ethical requirements requiring written contracts signed by the client and participating attorneys. Testimony was unrebutted that the affected clients knew of the referral arrangement and consented to it.
The referee recommended that Carson be diverted to a practice and professionalism enhancement program and be required to pay the costs of the proceedings. Carson now seeks review of the referee's report and recommendation.
Carson first argues that the referee's finding that there was a division of attorneys' fees between Carson and Vasilaros is not supported by competent substantial evidence. Carson then argues because there was no actual division of a fee, the referee's conclusion that Carson violated rules 4-1.5(f) and (g) is erroneous. We disagree and find that to the extent the referee's "Narrative Summary" constitutes formal findings of fact and conclusions of guilt,[1] those findings and conclusions are supported by competent substantial evidence in the record and should be upheld. See Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998) (stating that where the referee's findings are supported by competent substantial evidence, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee") (quoting Florida Bar v. Mac-Millan, 600 So.2d 457, 459 (Fla.1992)).
Carson does not dispute any of the underlying facts that are material to the referee's finding of a violation of the disciplinary rule governing contingent fee contracts. He admits that he had only an oral agreement for a referral fee in the three cases at issue, that none of the clients ever consented in writing to such a fee, and that he received $650 from Vasilaros in connection with one of the cases. He simply argues that the money he received was a "gift," and that in the other cases, due to Vasilaros' dishonesty, he never actually received a portion of the fee. Thus, he argues, there was no division of a fee in any of the cases and no violation of the rule. On the other hand, he also admits to having been ignorant of the applicable ethical rules governing referral fees.
However, Carson's testimony before the referee belies his argument that the $650 he received from Vasilaros was a "gift." In fact, when questioned about this money, Carson testified that he was entitled to the money and that his "interpretation [was] that was the payment to [him] for the referral." Vasilaros testified that the $650 was based upon twenty-five percent of the fee he received in the case.
In addition, contrary to Carson's assertions, regardless of whether he actually received a portion of the fee in the other cases, it is clear that he violated the requirements of rule 4-1.5(f)(2). That rule states that
[e]very lawyer who ... enters into an agreement ... for compensation ... whereby the lawyer's compensation is to be dependent or contingent ... upon the successful prosecution or settlement [of *1072 the claim] shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client.

R. Regulating Fla. Bar 4-1.5(f)(2) (emphasis added). This rule clearly prohibits not only the actual receipt of a contingent fee without a written contract, but also prohibits entering into an oral agreement for such a fee.
Additionally, rule 4-1.5(g) states:
[A] division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
We find that a fair reading of this rule supports a conclusion that it has been violated where, as here, an attorney enters into an oral agreement to divide the fee and pursues collection of the fee despite the fact that the agreement was never reduced to writing, the client never consented in writing to such a fee and no responsibility for the case was assumed. Rule 1-10.1 states that "[a]ll members of The Florida Bar shall comply with the terms and the intent of the Rules of Professional Conduct as established and amended by this court," (emphasis added) and rule 3-4.3 provides:
The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof.
As we stated in Florida Bar v. Rubin, 709 So.2d 1361, 1364 (Fla.1998), "[t]his Court expects strict compliance with ... rules requiring a client's written consent to an attorney's fee regardless of the circumstances involved. These requirements must be diligently adhered to and enforced in order ... to preserve public confidence in the legal profession." See also Chandris, S.A. v. Yanakakis, 668 So.2d 180, 185-86 (Fla.1995) (holding that a contingent fee agreement that is not in compliance with the Rules of Professional Conduct is void as against public policy and not enforceable). It was undisputed that Carson performed no legal services in the case, there was no written agreement for a referral fee, and the client never consented in writing to a referral fee. Accordingly, we find no basis for reversing the referee's findings.
Carson next argues that the referee erroneously assessed costs against him. First, Carson argues that the assessment of costs was improper because the charges against him were not proven. Rule 3-7.6(o)(2) provides that "[t]he referee shall have discretion to award costs and, absent an abuse of discretion, the referee's award shall not be reversed." Further, "[w]hen the bar is successful, in whole or in part, the referee may assess the bar's costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive or improperly authenticated." R. Regulating Fla. Bar 3-7.6(o)(3).
Here, we find that the Bar was at least partially successful in prosecuting Carson. Carson was not acquitted of the charges, but rather, the referee heard the evidence and stated in her "Narrative Summary" that "respondent failed to comply with the requirements of Rule of Professional Conduct 4-1.5(f) and (g)." Further, as discussed above, Carson admits conduct sufficient to support a finding that he violated these rules.
*1073 Carson also argues that the Bar should be required to bear its own costs because it "took an excessively broad approach in this case," citing Florida Bar v. McCain, 361 So.2d 700 (Fla.1978). In McCain, the Bar complaint alleged twenty specific acts of misconduct, only two of which were found to have been proven. See id. at 708 (England, J., concurring). As to costs, the Court stated that it agreed with the referee in the case that the Bar "took an excessively broad approach to this case and failed to early abandon counts that could not be proved." Id. at 707. Thus, the Court ordered that each party bear its own costs. See id.
Here, while Carson apparently feels that his prosecution was unfair, the Bar did not charge him with misconduct that could not be proven. In fact, as discussed, Carson admits the charged conduct. Accordingly, we reject Carson's argument that the Bar took an excessively broad approach in this case.
Carson also argues that the Bar's costs are excessive and were not properly authenticated. Specifically, he disputes (1) the grievance committee level costs because other grievance matters were being heard on the same day; (2) the travel expenses of bar counsel and transcript costs at the referee level; and (3) the copy costs. We find that Carson's arguments as to the appropriateness of these costs are without merit. All of the costs listed on the Bar's affidavit are permitted as taxable costs under rule 3-7.6(o)(1). Additionally, bar counsel signed the affidavit of costs under oath, and nothing in the record shows that the listed costs are excessive. Accordingly, we find no abuse of discretion and approve the assessment of costs against Carson.[2]
Finally, Carson's admitted ignorance of the ethical requirements governing written contracts, while no excuse, makes the referee's diversion to the Bar's Ethics School a particularly appropriate resolution of this case. Provided that Carson successfully completes the diversion program, there will be no disciplinary sanction reported in his permanent bar record. See R. Regulating Fla. Bar 3-5.3(i).
The referee's report and recommendation are hereby approved, and this disciplinary matter is diverted to a practice and professionalism enhancement program under the terms and conditions as set forth in the referee's report. Judgment for costs is hereby entered against Carson in the amount of $2,956.05, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Rules 3-5.3(h)(1) and (2) permit diversion of a disciplinary case at trial level to a practice and professionalism enhancement program either by agreement of the parties or "if, after submission of evidence, but before a finding of guilt, the referee determines that, if proven, the conduct alleged to have been committed by the respondent is not more serious than minor misconduct." (Emphasis added.) Here, there was no consent to diversion by Carson, and it is clear that the referee's recommendation was made after submission of evidence in the case. Thus, under rule 3-5.3(h)(2), the recommendation would appear to have been made without a formal finding that the conduct charged in the complaint was actually proven and before a formal finding of guilt.
[2] We reject without comment Carson's other arguments as to the propriety of the assessment of costs against him.